UNITED STATES of America

v.

FREZZO BROTHERS, INC., Guido
Frezzo, James L. Frezzo.

Crim. No. 78–218.

United States District Court,
E. D. Pennsylvania.

Nov. 22, 1978.

Peter F. Vaira, U. S. Atty., Bruce J. Chasan, Asst. U. S. Atty., Eastern District of Pennsylvania, Philadelphia, Pa., Michael P. Carlton, Sp. Atty., Dept. of Justice, Washington, D. C., for plaintiff.

William J. Gallagher, MacElree, Harvey, Gallagher & Kean, Ltd., West Chester, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Defendants, Frezzo Brothers, Inc. (Frezzo Bros.), Guido Frezzo (Guido) and James L. Frezzo (James), were found guilty by a jury on all six counts of an indictment charging them with willfully or negligently discharging pollutants in violation of Sections 301(a) and 309(c) of the Federal Water Pollution Control Act Amendments of 1972 (the Act), 33 U.S.C. §§ 1311(a), 1319(c) (1970 ed. Supp. IV). Defendants have filed a motion for judgment of acquittal. In the alternative, they have moved for a new trial. Oral argument was had on the motions. For the reasons hereinafter set forth, defendants' motions will be denied.

## I. *Motion for Judgment of Acquittal.*

■ In their motion for judgment of acquittal, defendants make the following contentions:

(A) That the Court erred in denying the defendants' pretrial motion to dismiss the indictment for failure of the Administrator of the Environmental Protection Agency (EPA) either to notify the defendants of alleged violations or to institute a civil suit against them, prior to the institution of criminal proceedings;

(B) That the Court erred in denying the defendants' pretrial motion to dismiss the indictment on the ground that there were no effluent standards applicable to defendants;[1] and

(C) That there was insufficient evidence presented to prove that the alleged discharge of pollutants was caused either willfully or negligently by any of the defendants, that any of the defendants discharged the pollutants, that the individual defendants were either owners or corporate officers of Frezzo Bros. at the time of the alleged offenses, and that Frezzo Bros. owned the property in question or operated the holding tank in question at the time of the alleged offenses.

■ In connection with the defendants' contentions that the issuance of an order or the institution of a civil suit by the Administrator is a prerequisite to the filing of a criminal prosecution, we agree with the decision of the court in *United States v. Phelps Dodge Corp.,* 391 F.Supp. 1181 (D.Ariz.1975), which considered and rejected this same contention. In *Phelps Dodge,* the Court concluded that the Administrator is "not required to proceed first to effect a correction by civil means before instituting criminal proceedings." *Id.* at 1184. Thus, we find that we correctly denied the defendants' motion to dismiss.

■ In connection with the defendants' contention that the indictment should have been dismissed because of the lack of effluent standards applicable to the defendants, we read Section 301(a) of the Act as

---

1. The first two contentions of the defendants should properly have been raised in a motion for arrest of judgment. Fed.R.Crim.P. 34; 2 Wright, *Federal Practice and Procedure*: Crim- inal §§ 571–574 (1969). We have considered these contentions as if they were raised in such a motion and deny the motion for the reasons stated herein.

clearly prohibiting the discharge of pollutants without a permit by any person, except as in compliance with certain sections of the Act which the defendants do not contend are applicable. 33 U.S.C. §§ 1311(a) (1970 ed., Supp. IV). The defendants acknowledge that they neither have a permit nor have they applied for one. In interpreting Section 301(a) of the Act, the Supreme Court has stated that "it is unlawful for any person to discharge a pollutant without obtaining a permit and complying with its terms." *EPA v. State Water Resources Control Board*, 426 U.S. 200, 205, 96 S.Ct. 2022, 2025, 48 L.Ed.2d 578 (1976); *see Train v. Colorado Public Interest Research Group*, 426 U.S. 1, 7, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976); *Natural Resources Defense Council, Inc. v. Costle*, 568 F.2d 1369, 1374, 186 U.S.App.D.C. 147 (1977) ("the legislative history [of the Act] makes clear that Congress intended the . . . permit to be the only means by which a discharger [of pollutants] . . . may escape the total prohibition of § 301(a)"); *Bethlehem Steel Corp. v. Train*, 544 F.2d 657, 659 (3d Cir.), *cert. denied*, 430 U.S. 975, 97 S.Ct. 1666, 52 L.Ed.2d 369 (1976) ("all discharges of pollutants must be authorized by a permit . . . ."). Because the defendants admit that they never obtained or applied for a permit, any discharge of pollutants by them would be unlawful under Section 301(a), even though no effluent standards are applicable to them. Thus, we correctly denied the defendants' motion to dismiss on the ground that there were no applicable effluent standards.

■ In connection with defendants' contention that the evidence was insufficient, we find that the evidence produced at trial, viewed in a light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Armocida*, 515 F.2d 29, 46 (3d Cir.), *cert. denied*, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975), is more than sufficient to support the verdict. We summarize it as follows:

The defendants, Guido and James, are President and Secretary, respectively, of the defendant corporation, Frezzo Bros., a family business formed in the 1950's engaged in the growing of mushrooms and the manufacturing of mushroom compost necessary for growing mushrooms. The primary ingredient of mushroom compost is horse manure. The Frezzo Bros. property (the Frezzo property) is located on the east side of Penn Green Road, near Avondale, Chester County, Pennsylvania. A concrete holding tank constructed on the property in 1971 gathers the water runoff from the compost and, by a system of pumps, recirculates the water runoff back onto the compost. In addition, a storm water runoff system separate from the compost operations carries rainwater from the property, under Penn Green Road through a pipe which runs for approximately 200 feet from the Frezzo property into an unnamed tributary of the East Branch of the White Clay Creek. The White Clay Creek crosses the Delaware state line and runs into the Christina River, which in turn runs into the Delaware River. On each of the six dates charged in the indictment, runoff from the compost pile made its way into the storm water runoff system and was carried through the pipe into the tributary of the White Clay Creek. A channel box is located about ten feet west of the Penn Green Road, across the street from the Frezzo property. By lifting the cover on this channel box, one can observe the drainage from Frezzo Bros.' storm water runoff system as it flows through the pipe toward the White Clay Creek.

The evidence presented by the Government showed that samples of the discharge from the Frezzo property were taken on each of the six dates charged in the indictment, and many of these samples were introduced as exhibits at trial. The testimony and stipulations of various chemists and physical scientists demonstrated that chemical and bacteriological tests were properly conducted on each of the samples and that the discharges were "sewage", inasmuch as the results of the tests showed that the samples contained higher concentrations of pollution-producing chemicals and bacteria than untreated human sewage. In addi-

tion, one physical scientist testified that the test results clearly indicated that the discharges contained "biological materials" and that the discharges were also "sewage". "Sewage" and "biological materials" are terms specifically included in the Act's definition of "pollutant". 33 U.S.C. § 1362(6) (1970 ed. Supp. IV).

The Government introduced as exhibits at trial several photographs which showed not only the layout of the Frezzo property, but also the path that runoff from the compost pile would follow in entering the storm water runoff system, through which it would be carried from the Frezzo property through the channel box into the unnamed tributary of the East Branch of the White Clay Creek. One witness testified that he had actually walked along the path of the pipe from Penn Green Road to the pipe's end at the tributary and that there were no other mushroom manufacturers upgrade of the channel box. He further testified that results of analyses of samples from the channel box and from the White Clay Creek substantiated his conclusion that the pollution in the White Clay Creek came from the Frezzo property. Therefore, his stated opinion was that the pollution of the White Clay Creek was due primarily to the discharge from the Frezzo property. In addition, there was testimony concerning the amount of rainfall in the area and that the holding tank was not large enough to contain normal rainfall.

Testimony was presented by several witnesses that on many occasions, commencing as far back as 1970, the defendants in this case had been investigated, visited and confronted by a number of state and county employees concerning the fact that the stream in question was being polluted by runoff from the compost operation conducted by the defendants on the Frezzo property.

Testimony in connection with the articles of incorporation of Frezzo Bros., which were introduced as an exhibit by the Government, demonstrated that the corporation was incorporated in 1969 under the laws of Pennsylvania and that James and Guido were two of the three original directors. The Government also introduced as an exhibit a deed dated February 2, 1973 which listed Frezzo Bros. as grantor and which contained notarized signatures of Guido as President and James as Secretary. On a visit to the Frezzo property on November 16, 1976, an environmental specialist with the Pennsylvania Department of Environmental Resources (the DER), upon asking to speak to a responsible official of the company, was directed to James. He questioned James concerning a brown-colored liquid flowing in the White Clay Creek coming from a pipe he had traced to the Frezzo property. A letter dated October 4, 1971 from James to the DER, introduced as an exhibit by the Government, indicated that James knew that the holding tank was inadequate. One witness testified that at a visit to the Frezzo property on January 12, 1978, he was given a tour of the premises by James and Guido, who indicated their control and ownership of the premises, including the holding tank; they also told him that they had constructed the storm runoff system. This witness made an in court identification of both James and Guido. In addition, there was testimony that on May 9, 1978 James made the statement that "we can control our waters 95% of the time."[2] Finally, there was testimony that the Frezzo property was listed at the tax assessor's office in the Chester County Courthouse as belonging to the corporation.

The Government's case was strong, and there can be no doubt that the evidence was sufficient to support the jury's verdict as to each of the defendants and as to each of the six counts of the indictment. The evidence amply supports a finding by the jury that each of the defendants discharged pollutants willfully or negligently, that James and Guido were owners or corporate offi-

---

2. The Court instructed the jury that the contents of the October 4, 1971 letter and this statement should be used as evidence only against James and not against Guido or Frezzo Bros. The defendants challenge the admissibility against Guido and Frezzo Bros. of the letter and this statement. See our discussion at page 271–272, *infra*.

cers of Frezzo Bros., and that Frezzo Bros. owned the property and controlled the compost operation. We therefore reject the defendants' contention that the evidence produced at trial was insufficient to support the verdict of the jury.

## II. *Motion for a New Trial.*

Defendants claim the following errors in support of their motion for a new trial:

(A) That the Court erred when it failed to strike the opinion offered by Richard Casson to the effect that the condition or pollution of the stream at the Ellicott Avenue Bridge was caused by the discharge from the Frezzo property;

(B) That the Court erred when it overruled the defendants' objections to the statement made by James on May 9, 1978 and to the reading of Government exhibit No. 41;

(C) That the Court erred when it failed to give defendants' point for charge No. 5 that the mere discharge of a pollutant is not a criminal offense;[3]

(D) That the Court erred when it advised the jury that the individual defendants could be found guilty outside their capacity as alleged co-owners and responsible officers of the corporation; and

(E) That the Court erred when it denied the defendants' motion to suppress samples taken from the channel box.

3. We note that the defendants' requested point for charge referred to is actually point for charge No. 6, rather than point for charge No. 5: "The mere happening of a discharge is not sufficient to show the discharge was intentional or negligent."

4. The May 9, 1978 statement by James, "We can control our waters 95% of the time," and his letter of October 4, 1971, wherein he stated "I planned on an additional tank for water storage. This would help me better contain run-off and rainwater . . .. I am still considering the installation of another holding tank," which letter he signed "James Frezzo, Partner", clearly indicate, in light of other evidence presented in the case, that these statements were made by James in his capacity as

## A. *The Opinion of Richard Casson.*

In connection with the defendants' contention that the opinion offered by Mr. Casson that the condition or pollution of the stream of the East Branch of the White Clay Creek at the Ellicott Avenue Bridge was caused by the discharge from the Frezzo property should have been stricken for lack of a factual basis, we find that our ruling at trial was correct. Mr. Casson testified that he had on several occasions observed the flow of the discharge from the Frezzo property to the Ellicott Avenue Bridge. In addition, he testified that a comparison of the results of the analyses of samples from the channel box and samples from the White Clay Creek substantiated his conclusion. Thus, we find that there was a sufficient factual basis for Mr. Casson's opinion. *See United States v. R. J. Reynolds Tobacco Co.,* 416 F.Supp. 313 (D.N.J.1976).

## B. *Statement and Letter of James.*

The defendants, Guido and Frezzo Bros., contend that the Court erred in admitting into evidence a statement made by James on May 9, 1978 and the contents of a letter written by James to the DER on October 4, 1971, despite the Court's instruction to the jury that the letter and the statement were admissible only as to James. Neither the statement made by James nor the pertinent contents of the letter fall within the *Bruton* rule, as defendants contend. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).[4]

co-owner and/or corporate officer of Frezzo Bros. and would probably be admissible against Frezzo Bros. Furthermore, since declarations of one partner in crime are admissible against his confederates where, as here, they were made in furtherance of a joint criminal venture and there is sufficient evidence independent of these statements to indicate the existence of such a venture, such statements probably would have been admissible against Guido and perhaps the corporation. *United States v. Trowery,* 542 F.2d 623, 627 (3d Cir. 1976); *United States v. Pugliese,* 153 F.2d 497, 500 (2d Cir. 1945). In an abundance of caution, however, at the request of the defendants the Court instructed the jury to consider the statements only against James.

In *Bruton*, the Supreme Court held that the admission of a co-defendant's confession implicating the defendant was a violation of the defendant's right to cross-examine witnesses against him, even if it was admitted with a cautionary instruction to the jury that the statement was only to be considered as evidence against the co-defendant. But implicit within this ruling was the rationale that the statement represent a "powerfully incriminating extrajudicial statement" which was highly damaging to the defendant and which was of critical, or at least substantial, weight to the Government's case. 391 U.S. at 128, 135–38, 88 S.Ct. 1620; *United States v. Munford*, 431 F.Supp. 278, 291 (E.D.Pa.1978). In light of the other evidence against defendants Guido and Frezzo Bros., we find that the statements involved here were not powerfully incriminating, highly damaging to these defendants, or of substantial weight to the Government's case against these defendants. Thus, we find that our rulings with respect to the May 9, 1978 statement of James and the letter from James to the DER were correct.

### C. *Point for Charge No. 5.*

Defendants' contention (C), that the Court failed to charge the jury that the mere discharge of a pollutant is not a crime, is without merit because the Court in fact specifically charged the jury as follows:

> In connection with the second element, therefore, the burden is on the Government to prove beyond a reasonable doubt that the defendants discharge of the pollutant was done willfully or negligently and the mere discharge of the pollutant, without proof that it was done either willfully or negligently, does not satisfy the Government's burden of proof beyond a reasonable doubt that the discharge was done willfully or negligently.

### D. *Charge of Court Concerning Individual Defendants.*

■ The individual defendants contend that the Court erred in its charge to the jury concerning them. They point to the indictment which charges that James, "an individual in his capacity as co-owner and Secretary of Frezzo Brothers, Inc." violated Sections 301(a) and 309(c) of the Act and that Guido, "an individual in his capacity as co-owner and President of Frezzo Brothers, Inc." violated Sections 301(a) and 309(c) of the Act, and they claim that the Court erred in omitting this language in its charge to the jury concerning the individual defendants.

The statute creates an offense, the gravamen of which is the willful or negligent discharge of a pollutant by any person without a permit. It does not create a separate offense for such a discharge by a person in his capacity as a co-owner or an officer of a corporation or in any other capacity.[5] In the Court's charge, the jury was instructed that the Government had a burden to prove beyond a reasonable doubt all of the essential elements of the crime as to each defendant.[6] The charge stated that the essential elements of the crime consisted of the willful or negligent discharge of a pollutant without a permit. Inasmuch as

---

**5.** The Act defines "person" as follows:

> The term "person" means an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body. 33 U.S.C. § 1362(5) (1970 ed. Supp. IV).

The Act also provides that for purposes of section 309(c), "the term 'person' shall mean, in addition to the definition contained in section 1362(5) of this title, any responsible corporate officer." 33 U.S.C. § 1319(c) (1970 ed. Supp. IV). The Court charged the jury concerning the meaning of the phrase "responsible corporate officer".

**6.** The Court charged the jury as follows:

> Now, the essential elements that must be found beyond a reasonable doubt before you may find a defendant guilty of violating those sections—in other words, Title 33, Section 1311(a) and 1319(c)—are that on or about the dates alleged in the indictment—and I have read those dates to you, and you will have it with you out there.
>
> These are the elements:
>
> Number 1. That the defendant discharged a pollutant;
>
> Number 2. That the defendant's discharge of the pollutant was done willfully or negligently;
>
> Third. That the defendant did not have a permit to discharge the pollutant.

the capacity in which one discharges the pollutant is not an essential element of the crime, the language of the indictment alleging that James and Guido each acted in his capacity as co-owner and/or Secretary and President of Frezzo Bros. goes beyond alleging matters which are essential elements of the crime. Language in an indictment which goes beyond alleging matters which are essential elements of the crime charged is surplusage and need not be proved. *United States v. Greene*, 497 F.2d 1068, 1086 (7th Cir. 1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975); *United States v. Goodwin*, 440 F.2d 1152, 1157 (3d Cir. 1971). It therefore follows that the language concerning the capacity in which James and Guido committed the crime is surplusage and need not be proved, and the jury need not have been so charged.

In their memorandum of law in support of their motion for a new trial, the defendants allege a fatal variance between the indictment and the Court's charge. The Court finds no basis for such a contention. Defendants rely on *United States v. Smolar*, 557 F.2d 13 (1st Cir.), *cert. denied*, 434 U.S. 971, 98 S.Ct. 523, 54 L.Ed.2d 461 (1977), which held that the Court may not in its instruction change the charging part of an indictment "to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes." *Id.* at 19 (quoting *Stirone v. United States*, 361 U.S. 212, 216, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960)). The fact that the charge did not mention co-owners and officers of Frezzo Bros. did not in any way change the charging part of the indictment as discussed in *Smolar.* The indictment was read to the jury and it went out with the jury during its deliberations. Furthermore, all of the evidence presented by the Government concerning James and Guido pointed to the fact that they were in control of the operation of Frezzo Bros. We are, therefore, unable to find any error in the charge.

E. *Motion to Suppress.*

Defendants contend that the Court should have ordered the suppression of all of the samples taken from the channel box on the west side of Penn Green Road, which channel box was not located on the Frezzo property. At the suppression hearing, however, there was no evidence presented that the defendants were on the premises at the time of the seizure of the samples, that the defendants had a legitimate proprietary or possessory interest in the premises or that the defendants were charged with an offense that includes as an essential element of the offense possession of the samples seized. *Brown v. United States*, 411 U.S. 223, 230, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). Thus, the defendants lacked standing to object to the seizure of the samples taken from the channel box, and we correctly denied their pretrial motion to suppress.

While we do not herein discuss all the contentions of alleged error raised by the defendants, we have considered each and every allegation of error and hold that none of them, singly or collectively, is of sufficient substance to merit any further discussion as a basis for granting a judgment of acquittal or a new trial in this case.

Accordingly, an Order will be entered denying the defendants' motions for judgment of acquittal and a new trial.