**UNITED STATES of America**

v.

**FREZZO BROTHERS, INC., Guido Frezzo and James L. Frezzo.**

**Crim. No. 78–218.**

United States District Court,
E. D. Pennsylvania.

June 27, 1980.

John Rogers Carroll, Thomas Colas Carroll, Carroll, Creamer, Carroll & Duffy, Philadelphia, Pa., for plaintiffs.

Peter F. Vaira, U.S. Atty., Bruce J. Chasan, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Petitioners James Frezzo, Guido Frezzo, and Frezzo Brothers, Inc. (Frezzo Bros.) were found guilty by a jury of discharging pollutants into navigable waters of the United States without a permit in violation of the Federal Water Pollution Control Act, 33 U.S.C.A. §§ 1311(a), 1319(c) (Act). James Frezzo and Guido Frezzo have filed petitions under 28 U.S.C.A. § 2255 or, in the alternative, for writs of error coram nobis, for vacation of the sentences imposed upon them by this Court. Frezzo Bros. has filed a petition for a writ of error coram nobis seeking the same relief. The petitioners claim that they were exempt from the permit requirements of the Act by virtue of 40 C.F.R. § 125.4(i) (1978), which was in effect at the time the petitioners were indicted and convicted, but has subsequently been revised.

Petitioners did not raise this issue at the time of their trial, nor was the issue raised in pre-trial or post-trial motions or on direct appeal. *See United States v. Frezzo Brothers, Inc.,* 461 F.Supp. 266 (E.D.Pa.1978), *aff'd,* 602 F.2d 1123 (3d Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). After their convictions were affirmed by the Third Circuit, petitioners retained their present counsel, who petitioned the Third Circuit for a rehearing on the ground that the petitioners' activities were exempt from the permit requirements of the Act by virtue of 40 C.F.R. § 125.4(i). The Third Circuit denied the petition for rehearing without addressing its merits. A petition for a writ of certiorari was denied by the Supreme Court, after which petitioners filed these motions for relief under section 2255 or for a writ of error coram nobis. We heard oral argument on these motions and for the reasons hereinafter set forth, the petitioners' motions will be denied.

The evidence at the trial of this action showed that Guido Frezzo and James Frezzo were the president and secretary, respectively, of Frezzo Bros., a family business organized for the purpose of growing mushrooms and manufacturing mushroom compost, which is necessary for growing mushrooms. The primary ingredient of mushroom compost is horse manure. The petitioners built a large concrete holding tank on their property to catch all of the runoff from the mushroom compost pile. The petitioners' property contains two runoff systems. One system gathers the runoff from the compost pile into the holding tank described above and recirculates this runoff back to the compost pile by a system of pumps. The other system gathers the storm water runoff from the property and empties this storm water runoff into a pipe that runs approximately 200 feet from the Frezzo Bros. property into an unnamed branch of a creek which ultimately runs into the Delaware River. On each of the

six dates charged in the indictment, runoff from the compost system made its way into the storm water runoff system and was permitted to be discharged into the branch of the creek. Samples of the runoff taken at these times contained pollutants that may not be discharged under the Act without a permit. There was uncontradicted testimony that none of the petitioners had ever been issued a permit by the EPA.

At the end of the presentation of evidence, the Court charged the jury as to the elements the Government must prove in order to convict the petitioners under the Act. After reading the pertinent provisions of 33 U.S.C.A. § 1311(a) and 1319(c) to the jury, the Court charged that the Government must prove three elements beyond a reasonable doubt.

Number 1. That the defendant discharged a pollutant;

Number 2. That the defendant's discharge of the pollutant was done willfully or negligently;

Third. That the defendant did not have a permit to discharge the pollutant.

In connection with the first element, the Court defined the terms "pollutant," "discharge of a pollutant," and "point source" in accordance with the definitions of these terms in the Act. We stated that the "discharge of a pollutant" means:

any addition of any pollutant to navigable waters from any point source.

We further charged that a "point source" was defined in the Act as:

any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged.

As previously stated, the jury returned a verdict of guilty against all of the petitioners.

The regulations promulgated under the Act by the Administrator of the Environmental Protection Agency which the petitioners claim entitles them to relief are 40 C.F.R. §§ 125.4(i) and 125.53. Section 125.-4(i) states:

The following do not require an NPDES permit:

. . . . .

(i) Water pollution from agricultural and silvicultural activities, including runoff from orchards, cultivated crops, pastures, rangelands, and forest lands, except that this exclusion shall not apply to the following:

. . . . .

(3) Discharges from agricultural point sources as defined in § 125.53.

Section 125.53 provides the following definitions:

(1) the term "agricultural point source" means any discernible, confined and discrete conveyance from which any irrigation return flow is discharged into navigable waters.

(2) The term "irrigation return flow" means surface water, other than navigable waters, containing pollutants which result from the controlled application of water by any person to land used primarily for crops, forage growth, or nursery operations.

(3) The term "surface water" means water that flows exclusively across the surface of the land from the point of application to the point of discharge.

Petitioners contend that their runoff system is not an agricultural point source by the terms of section 125.53. They further contend that their business is an agricultural activity under section 125.4(i) and therefore is not required to have a permit for its runoff system.

Petitioners argue that the applicability of the alleged agricultural activity exception to them renders their convictions constitutionally invalid for the reason that they were denied effective assistance of counsel in that their trial counsel failed to contend that their activities were exempt from the permit requirements of the Act by virtue of the above quoted regulations.

The petitioners were represented by exceptionally capable trial counsel during the

course of their trial. Their counsel filed pre-trial motions urging the dismissal of the indictment and the suppression of certain evidence. He also filed post-trial motions for judgment of acquittal, arrest of judgment, and for a new trial. After these motions were denied, he filed an appeal which briefed all of these issues. The petitioners, through their newly retained counsel, now claim that this representation was ineffective in light of the above quoted regulations. Although there is a question as to whether the manufacturing of mushroom compost is an "agricultural activity," there is no question that the regulations do not and did not exempt the discharge of the pollutants into the stream under the circumstances presented at the trial of this case.

The administrative history of these regulations, as reported in the Federal Register, 41 Fed.Reg. 7963 (1976), explicitly states that the sole intent of sections 125.4(i) and 125.53 of these regulations was to make it clear that the return flow of water used for irrigation purposes which contained pollutants was not exempt from the permit requirements of the Act. These sections of the regulations specifically subjected the return flow of irrigation water to the permit requirements of the Act, and exempted the natural runoff of rain water from these permit requirements.

The record in this case clearly shows that the discharge of pollutants for which the petitioners were convicted was not from the natural runoff of rain water from the petitioners' land. These discharges emanated from a concrete holding tank which was erected to collect the runoff from mushroom compost piles being used by the petitioners for the purpose of manufacturing compost. The various chemists and physical scientists who testified at the trial of this case classified the samples of the discharges into the stream as "sewage" because the results of the tests conducted by them showed that these samples contained higher concentrations of pollution producing chemicals and bacteria than untreated human sewage. There is no doubt that "sewage" is specifically included in the defi-

nition of "pollutant" as set forth in the Act. There was also testimony at the trial that as early as 1970 the petitioners had been investigated, visited, and confronted by a number of state and county employees concerning the fact that the stream in question was being polluted by "sewage" from their mushroom composting operations.

We therefore find that pursuant to *United States v. DeFalco,* No. 78–2126 (3d Cir. Dec. 28, 1979), the trial counsel for the petitioners exceeded the standard of "customary skill and knowledge which normally prevails at the time and place," and that the petitioners have failed to show any "specific prejudice" in that sections 125.4(i) and 125.53 of the regulations do not and did not exempt the activities of the petitioners from the permit requirements of the Act.

■ The petitioners also contend that their convictions violated due process because these sections of the EPA's regulations excluded their discharges into the stream from the permit requirements of the Act. Since we have already determined, however, that these sections of the regulations do not and did not exempt the discharges of the petitioners from the permit requirements of the Act, this claim is without merit.

■ The final contention that we must address is whether the petitioners' due process rights were violated because sections 125.4(i) and 125.53 of the regulations failed to provide the petitioners fair warning that their pollution activities were in violation of the Act. Petitioners contend that these sections of the regulations deprived them of fair warning that their conduct was criminal because they purported "to give notice to persons of common intelligence . . . that the . . . petitioners' activities were excluded from the Act's criminal sanctions." In essence, the petitioners contend that they were "affirmatively misled" by these regulations into believing that the Act did not require them to procure a permit. *United States v. Pennsylvania Industrial Chemical Corporation,* 411 U.S. 655, 93 S.Ct. 1804, 1816, 36 L.Ed.2d 567 (1973). *See*

*Cox v. Louisiana*, 85 S.Ct. 476 (1965); *Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959). Our review of the entire record in this case, however, reveals that the petitioners have never attempted to establish that they relied on these regulations in deciding not to apply for a permit. In fact, these regulations were never mentioned in the record until the petitioners filed a motion for a rehearing in the court of appeals after their original appeal had been decided adversely to them. Since the petitioners have not shown that they ever relied on these regulations, they cannot claim that the regulations would have led them to believe that their business activities were exempt from the permit requirements of the Act. *United States v. United States Steel Corp.*, 482 F.2d 439 (7th Cir. 1973); *Pennsylvania Industrial, supra.* Furthermore, as we pointed out in *United States v. Frezzo Bros., Inc.*, 461 F.Supp. 266 (E.D.Pa. 1978), section 301(a) of the Act, 33 U.S.C.A. § 1311(a), makes it a crime to discharge pollutants without a permit, and the Act does not require that one who violates the Act receive any warning or notice that his actions are in violation of the Act.

We will therefore deny the petitioners' motion for relief under section 2255 or, alternatively, for writs of error coram nobis.