UNITED STATES of America,
Plaintiff-Appellee,

v.

Bill E. WOLF, Defendant-Appellant.

No. 79–1773.

United States Court of Appeals,
Tenth Circuit.

March 27, 1981.

William J. Skepnek of Linn, Helms, Kirk & Burkett, Oklahoma City, Okl. (William R. Burkett, Oklahoma City, with him on the brief), for defendant-appellant.

Stephen P. Learned, U. S. Dept. of Justice, Washington, D. C., and Frank Michael Ringer, Asst. U. S. Atty., Oklahoma City, Okl. (Larry D. Patton, U. S. Atty., Oklahoma City, Okl., with them on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, BARRETT and SEYMOUR, Circuit Judges.

SETH, Chief Judge.

Appellant Wolf seeks review of his convictions for making a false statement in violation of 18 U.S.C. § 1001, and for mail fraud, 18 U.S.C. § 1341.

On appeal he urges reversal based on insufficiency of the evidence to show his control of the acts charged, and further asserts that section 1001 is inapplicable because he did not make a false statement "in any matter within the jurisdiction of any department or agency of the United States."

Appellant Wolf was vice-president of Pioneer Energy Corporation, a distributor of oil and related products, and controlled the corporation. Pioneer had entered into a

contract to furnish Apco Oil Corporation up to 500 barrels of crude oil per day. To purportedly fulfill in part this contract appellant Wolf arranged to purchase fuel oil, an inferior and less expensive refined product, from a Mr. Ken Ross.

Federal regulations then required a producer to certify his products to the first purchaser, 10 C.F.R. § 212.131(a), and a reseller was to pass on or make a certification to his purchasers. *Id.* at § 212.131(b). Mr. Ross falsely certified his shipments of fuel oil as "stripper crude oil," the product Apco expected appellant Wolf would deliver. These certifications were included in the invoices Mr. Ross mailed to Pioneer. Pioneer's (Wolf's) general manager then made the same false certifications on the invoices delivered to Apco. Apco included these deliveries as "stripper crude" in the monthly reports (form P–102) to DOE which in turn based its "entitlement" program on these reports.

Both counts on which appellant was convicted related to the transmission of invoices. The false statement count charged appellant with knowingly making or having caused to be made a false statement in an invoice from Pioneer to Apco. With respect to the mail fraud count the jury convicted appellant of knowingly causing for the purpose of executing a scheme the mailing of two invoices from Ross to Pioneer containing known false certificates.

Appellant urges reversal of the false statement conviction on the ground that the facts shown failed to constitute a violation of 18 U.S.C. § 1001. He claims that a statement made to Apco was one not made in a matter within the jurisdiction of a federal agency and thus the jurisdictional requisite of the statute was not established. The government contends that appellant defrauded it of its right to have its programs and regulations pertaining to allocation of crude oil and the control of pricing to be administered without fraud.

The certification requirement in the regulations was basically for pricing purposes. The crude oil was to be certified as "old oil," "new oil," or "stripper oil." There were different prices permitted and different controls based on the three categories. The certification was required, as indicated above, to be first made by the producer. This certification was then passed on by the intermediate purchasers to the refiner. The refiner used the certificates to make monthly reports to the regulatory agency. The "entitlement" program of the agency was based on these monthly reports and any resultant adjustments among refiners was derived from these reports.

Pioneer was in an intermediate position between a "producer," Ken Ross, and the refinery, Apco. Pioneer made a certification to Apco in the invoice used as the basis of the false statement charge (Count IV) that the oil sold was "stripper crude" when in fact it was fuel oil, a refined product. The appellant had received a "stripper crude" certificate from Ken Ross, but it was false and appellant knew it to be so. The certificate on the invoice to Apco was to enable Pioneer to receive the higher price allowed under the regulations for stripper crude. The appellant testified that he was aware of the certification requirements in general terms under the regulations, and knew also in a very general way about the entitlement program. It is apparent that the regulations required the correct certification of the oil by Pioneer and that this was an essential step or stage in the entitlement program. Identification of crude oil as "stripper," as "old," or as "new" is not possible from an examination of the oil and had nothing to do with the oil itself, only its source. Thus the certification starting with the producer was essential and had to be relied on.

It appears from the record that appellant was primarily concerned with receiving the higher "stripper oil" price from Apco than with the other consequences of the certification. However, as stated above, he was aware of the program and how the certification fitted in.

The certification on which the false statement count was based was in an invoice submitted by Pioneer to Apco, as described. It was not submitted to the government.

It was part of a business transaction between two private entities, but again it was required by the regulations to be made by Pioneer. The certification enabled Pioneer to receive a higher price for the oil than it was entitled to receive under the price control program. The money so received came only from Apco, and no government funds were involved either directly or indirectly. Appellant received no benefits from the government of a non-monetary nature. The false statement in the invoice utilized the program and the certification required under the program to obtain more money from Apco. The false statement had other consequences, as described above, in interfering with the entitlement computations.

██ It is well settled that the false statement need not be made directly to a federal agency to sustain a section 1001 conviction as long as federal funds are involved. *United States v. Baker*, 626 F.2d 512 (5th Cir.); *United States v. Stanford*, 589 F.2d 285 (7th Cir.); *United States v. Lewis*, 587 F.2d 854 (6th Cir.); *United States v. Matanky*, 482 F.2d 1319 (9th Cir.); *United States v. Bass*, 472 F.2d 207 (8th Cir.). In each instance where the issue arose in the cited cases there was directly concerned a regulatory or contractual scheme in which the federal government acted as a supervisor of disbursement or was to reimburse the defrauded non-federal agency. The false statement is typically made on an application for benefits and submitted to a state agency or private party. The federal government there either partially funds the program under which the undeserved benefits are requested or reimburses the agency for its expenditures. The funds fraudulently received thus come in effect from the United States. As mentioned, several circuits have found the jurisdictional requirement of section 1001 to be met under these circumstances. We are in accord. As the Fifth Circuit recently explained in *United States v. Baker*, 626 F.2d 512, 514 n. 5:

> "[T]he necessary link between deception of the non-federal agency and effect on the federal agency is provided by the federal agency's retention of 'the ultimate authority to see that the federal funds are properly spent.' "

██ The false statement here charged under 18 U.S.C. § 1001 is not intended to cause the disbursement of federal funds or funds provided in part by the government to a non-federal agency. The false statement was not intended to cause non-monetary government benefits to be directed to the appellant or to a person or entity he contemplated. The certification was made to wrongfully induce a private entity to make payments to Pioneer to which it was not entitled. It was a certificate required of Pioneer by the agency regulations, and it was thereby within the regulations. Its required use of the program or misuse enabled Pioneer to receive more than it was entitled to by making the false certificate. The act also caused this false information to be fed into the entitlement program, and it was apparent that this would take place. The certificate was a matter within the jurisdiction of the agency and the statement was a material one.

██ The matter of materiality was considered by this court in *Gonzales v. United States*, 286 F.2d 118 (10th Cir.), and in *Poulos v. United States*, 387 F.2d 4 (10th Cir.), and the test applied was whether or not the representation ("answer" in the cited case) "has the natural tendency to influence or was capable of influencing the decision of the officer or agent to whom it was submitted," citing *Alire v. United States*, 313 F.2d 31 (10th Cir.), *Travis v. United States*, 269 F.2d 928 (10th Cir.), and other cases. The application of that standard to the case before us must lead to the conclusion that the certification was material as held by the trial court. The issue of materiality may be intermixed with whether the matter was within the jurisdiction of the agency. As indicated, both requirements were met. The court instructed the jury without objection that the statements were material. Section 1001 is basically a provision directed to statements to obtain federal funds or direct governmental benefits. However, the section is of course not so expressly limited and we must hold that the

false certificate here concerned was within the scope of section 1001. It was required by the agency and was a basic part of the regulatory structure which depended on the accuracy and truth of such certificates. The statement was not for such direct purposes as in *Poulos v. United States*, 387 F.2d 4 (10th Cir.), or in *Gonzales v. United States*, 286 F.2d 118 (10th Cir.), but the considerations are the same. The record demonstrates that there was sufficient evidence before the jury to enable it to convict appellant for the certification as having arranged for it and as having directed that it be made.

Appellant also contends that the evidence adduced at trial was insufficient to support his conviction on the mail fraud count. That count alleged that appellant had knowingly caused, for the execution of the scheme to defraud, two fraudulent invoices to be mailed from Ken Ross to Pioneer. Appellant urges that these invoices were mailed in the ordinary course of business and not for the purpose of executing a fraudulent scheme. It is argued that Mr. Ross mailed the invoices to Pioneer simply to document his claim for the purchase price of each delivery.

■ To warrant a conviction under the mail fraud statute the government must prove two elements: a scheme to defraud and a mailing made for the purpose of executing the scheme. *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435; *United States v. Pisciotta*, 469 F.2d 329, 331 (10th Cir.). The statute does not require that the defendant himself use the mails as long as the defendant can reasonably foresee that the mails would be used at some time in furtherance of the scheme. *United States v. Curtis*, 537 F.2d 1091, 1095 (10th Cir.).

■ The evidence showed that appellant and Ken Ross agreed that invoices were needed by Pioneer and Ken Ross did mail such fraudulent invoices to Pioneer. The jury could have properly inferred that the invoices were mailed by Ken Ross and maintained by appellant for the purpose of avoiding detection of the scheme. If Apco

became concerned about the content of its crude oil supplies and inquired of Pioneer, Pioneer could have produced invoices to demonstrate that it received and sold Apco stripper crude. It is sufficient that appellant under the evidence could have foreseen that the mails would be used to prevent detection of the scheme. *United States v. LaFerriere*, 546 F.2d 182 (5th Cir.). Appellant's reliance on *United States v. Tarnopol*, 561 F.2d 466 (3d Cir.), is, therefore, misplaced.

The judgment on Count IV of the indictment for false statements is affirmed, and the judgment on Count XI for mail fraud is also affirmed.