Gregory A. MITCHELL, Plaintiff,

v.

**GREAT–WEST LIFE ASSURANCE COMPANY, and American Fidelity Assurance Co., Defendants.**

**No. CIV–90–196–T.**

United States District Court, W.D. Oklahoma.

July 11, 1991.

Richard Morris, Robert L. Stormont, Oklahoma City, Okl., for plaintiff.

Donald J. Gutteridge, Jr., Kerr Irvine Rhodes & Ables, Oklahoma City, Okl., John R Woodard, III, Feldman Hall Franden Woodward & Farris, Tulsa, Okl., for defendants.

ORDER DENYING DEFENDANT AMERICAN FIDELITY ASSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PARTIAL SUMMARY JUDGMENT TO PLAINTIFF

RALPH G. THOMPSON, Chief Judge.

## I. INTRODUCTION

At issue is defendant American Fidelity Assurance Company's ("American") motion for summary judgment. Plaintiff Gregory A. Mitchell responded in opposition, and submitted an added authority. American replied.

## II. BACKGROUND FACTS

In this action, plaintiff Gregory A. Mitchell seeks to compel defendant American to provide five additional months of extended health insurance coverage pursuant to 36 Okla.Stat. § 4509(B). One month of extended coverage has already been provided pursuant to 36 Okla.Stat. § 4509(A). Plaintiff's father, Royce Mitchell, worked for Tyler & Simpson Company and carried dependent health insurance on plaintiff. Tyler & Simpson terminated the group insurance with American effective December 31, 1987, and replaced it with insurance provided by Great–West Assurance Company ("Great–West") effective January 1, 1988. Greg Mitchell became totally disabled prior to the termination and consequently Great–West, the successor medical insurance provider, refused to insure plaintiff. On October 17, 1990, the Court dismissed Tyler & Simpson from this action.

The issues necessary to determine if American should provide the extended coverage are: 1) whether the health insurance policy was delivered in Oklahoma, and 2) whether the group covered under the policy was terminated.

## III. STANDARD FOR SUMMARY JUDGMENT

The facts presented to the court upon a motion for summary judgment must be construed in a light most favorable to the nonmoving party. *Board of Educ. v. Pico*, 457 U.S. 853, 864, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982); *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If there can be but one reasonable conclusion as to the material facts, summary judgment is appropriate. Only genuine disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Finally, the movant must show entitlement to judgment as a matter of law. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985); Fed.R.Civ.P. 56(c).

Although the Court must view the facts and inferences to be drawn from the record in the light most favorable to the nonmoving party, "even under this standard there are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chem. Co.*, 849 F.2d 1269, 1273 (10th Cir.1988). As stated by the Supreme Court, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 1).

The Supreme Court articulated the standard to be used in summary judgment cases, emphasizing the "requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510 (emphasis in original). A dispute is "genuine" "if a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. The Court stated that the question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. "The mere existence of a scintilla of evidence in support of the [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [party]." *Id.* at 252, 106 S.Ct. at 2512.

## IV. UNDISPUTED FACTS

Rule 14(B) of the Western District of Oklahoma provides a framework for determining undisputed facts at the summary judgment stage. The Rule provides:

> The brief in support of a motion for summary judgment (or partial summary judgment) shall begin with a section that contains a concise statement of material facts as to which movant contends no genuine issue exists. The facts shall be numbered and shall refer with particularity to those portions of the record upon

which movant relies. The brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of the movant's fact that is disputed. All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

W.D.Okla.R. 14(B).

A review of American's brief and Mitchell's response reveals that the following facts are undisputed within the meaning of Rule 14(B) for the purposes of this motion only:

1. American provided group employee hospitalization and disability benefits to plaintiff through a group plan with a multiple employer trust of which his employer, Tyler & Simpson Company, was a member.

2. The policy was issued in Mississippi, the locus of the trust. Individual certificates were issued to Tyler & Simpson employees, including plaintiff's father, Royce Mitchell.

3. The certificate issued to Royce Mitchell provided that the policy may be canceled on any premium due date by the policyholder or employer.

4. Further, the certificate provided that the policyholder or company may terminate the policy on any premium due date upon 31 days written notice.

5. Dependent coverage terminated when Royce Mitchell became insured under the Great–West policy.

6. In late 1987, American was notified that Tyler & Simpson would be canceling its coverage and replacing it with other coverage effective January 1, 1988.

7. Royce Mitchell was employed for more than six months prior to January 1, 1988.

8. Plaintiff was involved in an accident in December 1987, that paralyzed him. Plaintiff was, therefore, totally disabled at the time the new insurance policy provided by Great–West took effect.

9. Great–West has refused to provide coverage to plaintiff because of the exclusion to beneficiaries who are totally disabled on the effective date of the policy.

American Fidelity Assurance Company's brief at 1–2; Gregory A. Mitchell's response brief at 2.

## V. ANALYSIS

### A. State Where Insurance Was Issued.

■ American argues that the policy was issued in Mississippi, and delivered there to a multiple employer trust. Mitchell argues that the certificate of insurance was delivered in Oklahoma, and therefore the policy was delivered in Oklahoma for purposes of this motion pursuant to an Oklahoma statute. "As with any question of statutory interpretation, we must begin with the language of the statutes. If the statutory language 'is unambiguous and free of irrational result, that language controls.'" *United States v. Brittain*, 931 F.2d 1413, 1418 (10th Cir.1991) (quoting *Glenpool Util. Servs. Auth. v. Creek County Rural Water Dist.*, 861 F.2d 1211, 1214 (10th Cir.1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989)). The relevant Oklahoma statute provides:

**Extension and termination of coverage under group accident and health policy and contracts of hospital or medical service or indemnity**

A. In the case of an employee whose insurance is terminated under a group policy providing hospital, medical or surgical, or Christian Science care and treatment expense benefits, or contract of hospital or medical service or indemnity, such employee and his dependents shall remain insured under the policy for a period of at least thirty (30) days after such termination, unless during such period the employee and his dependents

shall otherwise become entitled to similar insurance from some other source.

B. If an employee has been covered for at least six (6) months under any group accident and health insurance policy *delivered in this state,* providing hospital, medical or surgical, or Christian Science care and treatment expense benefits, or under a contract of hospital or medical service or indemnity, and the individual employee has had his employment terminated or the group itself is terminated, then the termination shall not affect coverage of the insured or his dependents for any continuous loss which commenced while the insurance was in force. The extension of benefits beyond the period the insurance was in force may be predicated upon the continuous total disability of the person insured or his or her dependents or the expenses incurred in connection with a plan of surgical treatment, which shall include maternity care and delivery expenses, which commenced prior to the termination. The coverage for the extension of benefits shall be for the maximum benefits under the terminated policy or for a time period of not less than three (3) months in the case of basic coverage or six (6) months in the case of major medical coverage. Premium monies may be charged for the period of the extension of benefits. The premiums charged shall be the premiums which would have been charged for the coverage provided under the group policy or contract had termination not occurred.

36 Okla.Stat. § 4509 (emphasis supplied). American concedes that the insurance certificate, certificate booklet, and identification card were delivered in Oklahoma, but American argues they do not constitute the policy. *See Boseman v. Connecticut Gen. Life Ins. Co.,* 301 U.S. 196, 203, 57 S.Ct. 686, 690, 81 L.Ed. 1036 (1937) ("But the certificate is not a part of the contract of, or necessary to, the insurance.... It did not affect any of the terms of the policy."). Mitchell persuasively argues that *Boseman* is inapposite because unlike the circumstances in that case, here the Oklahoma statutes specifically define an insurance "policy" to include certificates. " 'Policy' means contract of or agreement for effecting insurance, or the certificate thereof, by whatever name called, and includes all clauses, riders, endorsements and papers attached thereto and a part thereof." 36 Okla.Stat. § 3602.

American unpersuasively argues that this definition found in Article 36 does not apply to the term "policy" found in Article 45 relied on by plaintiff for entitlement to extended benefits. However, Article 36 is entitled "The Insurance Contract In General," and it follows that its definitions would apply to Article 45, which is entitled "Group And Blanket Accident And Health Insurance." Moreover, section 3601 indicates that Article 36 applies to *certificates* delivered in Oklahoma, which is the precise issue at hand.

Further, plaintiff submitted an Attorney General opinion that advises "[t]itle 36 O.S. 1971, § 6055, is applicable to master policies purchased outside the State of Oklahoma when the certificates of insurance are issued for delivery in the State of Oklahoma, the insured resides in Oklahoma and the policy covers Oklahoma risks." 12 Op. Att'y Gen. 412, 415 (1980). Attorney General opinions are advisory in nature. *General Motors Corp. v. Oklahoma County Bd. of Equalization,* 678 P.2d 233, 237 (Okla.1983), *cert. denied,* 466 U.S. 909, 104 S.Ct. 1689, 80 L.Ed.2d 163 (1984) ("Attorney General ... opinions may not supplant the courts. The Attorney General gives his opinion for public officials' guidance until the questions concerning them are decided by the courts."). With citations to authorities in Illinois, Arkansas, Texas, and Missouri, the Attorney General of Oklahoma reasoned in the cited opinion that the insurance policies did not become effective until the certificate was delivered to the insured in Oklahoma, which is also where performance was contemplated, where risks were covered, and where final assent to the policy was given by delivery of the certificate. 12 Op.Att'y Gen. at 414–15. While the opinion regarded a statute other than that considered by this Court, the reasoning is

persuasive, and supports the interpretation urged by Mitchell.

Therefore, for purposes of satisfying the first requirement under the pertinent statute for entitlement to extended benefits, the Court concludes that as a practical matter the insurance policy was delivered in Oklahoma. There is no dispute that Mitchell's father was covered under the policy for at least six months so that requirement is satisfied. However, in order to prove full entitlement to the benefits requested, Mitchell needs to show that the group was terminated.

## B. *Termination of Group.*

 American argues that the statutory requisite of termination of the group is not satisfied because of the successive coverage by Great–West. American cites *Blue Cross/Blue Shield v. Shufelt,* 487 So.2d 1085, 1086–87 (Fla.App.1986), for the proposition that an employee who was terminated after becoming totally disabled was unable to claim entitlement to an extension of benefits based on a theory that the contract of group insurance was terminated. American argues that in a similar fashion the group coverage was not terminated, but merely changed. The Court disagrees with this logic.

First, American cites a solitary authority from a non-controlling jurisdiction. Second, the reasoning of this authority has absolutely no applicability under Oklahoma law, because had Mitchell's father been terminated from employment, like the plaintiff in American's authority, then the extension of benefits would be available pursuant to the Oklahoma statute:

> *If* an employee has been covered for at least six (6) months under any group accident and health insurance policy delivered in this state, providing hospital, medical or surgical, or Christian Science care and treatment expense benefits, or under a contract of hospital or medical service or indemnity, and *the individual employee has had his employment terminated* or the group itself is terminated, *then the termination shall not affect coverage of the insured or his de-*

> *pendents for any continuous loss which commenced while the insurance was in force ....*

36 Okla.Stat. § 4509(B) (emphasis supplied).

The instant case is also remarkably distinguishable from American's authority because, here, coverage for the entire group was terminated under the American insurance policy effective December 31, 1987. There was successive coverage provided by Great–West for the group, but the coverage was subject to any exclusions provided in the new contract. These exclusions materially altered the composition of the group covered by American by excluding, for example, the class of all dependents who were totally disabled as of the policy effective date. Therefore, the Court believes that the old group was terminated on December 31, 1987, and a new and significantly different group emerged on January 1, 1988, that is comprised of any members of the old group who are not members of any class excluded by the contract with Great–West. The new group is also notably different in that it is covered by ERISA, while the old group was not. *See* 29 U.S.C. §§ 1001–1461.

In effect, American's argument is that the Oklahoma, extended-benefits statute applies only when there is a total break in coverage of the group insurance. The Court believes that the intent of the Oklahoma Legislature was much more broad than this, and further it was specifically contemplated that any member of a class of totally disabled insureds who lost coverage and otherwise met the statutory requisites would be entitled to extended benefits when the group was terminated.

The applicability of the statute to the instant case was foreseeable by the Legislature and makes perfect sense. Under section 8.16 of the policy in this case, the group policy could be terminated on any premium due date, but "[t]hirty-one (31) days written notice of such termination must be given." American's brief at Ex. B, p. 30 (unnumbered). In accordance with the contract, the group insurance was terminated, and replacement insurance was

obtained through another carrier. However-er, a certain class of former members was contractually excluded. The excluded class was intended to be covered by the extend-ed-benefits provision of the pertinent stat-ute. Any other result works against the plain, unambiguous language of the stat-ute.

It is readily apparent to this Court that when a group policy is terminated, that any member of the class of totally disabled insureds is going to face extreme, if not insurmountable, difficulty in obtaining new insurance, and the extended benefits provi-sion was apparently intended by the Legis-lature to address this problem. In this regard, it is not without significance that the Legislature added a proviso under 36 Okla.Stat. § 4509(A) that the extended ben-efits provided there were available "unless during such period the employee and his dependents shall otherwise become entitled to similar insurance from some other source." The omission of this language under subsection B strongly indicates that had the Legislature intended the result urged by American, then they could have simply added similar language with regard to the group. The Legislature did not add the language to subsection B, and the pur-pose is transparent.

Instead, the Legislature, in subsequently enacted legislation, specifically indicated that when group insurance is discontinued and replaced by a successive carrier, then the prior insurance carrier would be liable for "any period of extension of benefits" pursuant to 36 Okla.Stat. § 4509(B) for an individual who is totally disabled, and the succeeding carrier would not acquire any liability until after this period. 36 Okla. Stat. § 4509.1(D)(2)(c). This statute was enacted in 1988, and is not controlling here because it was enacted after the claim arose. However, it does illuminate a con-sistent Legislative intent behind the perti-nent statutes that section 4509(B) applies to Mitchell's claim, and further discredits American's theory that section 4509(B) was never intended to apply under the circum-stance of successive group insurance poli-cies. "Legislative acts are to be construed in such manner as to reconcile the different provisions and render them consistent and harmonious, and give intelligent effect to each." *Abbott v. Board of Trustees*, 586 P.2d 1098, 1101 (Okla.1978). Therefore, American has not shown that it is entitled to judgment as a matter of law. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d at 885; Fed.R.Civ.P. 56(c).

## VI. CONCLUSION

Accordingly, the Court finds that sum-mary judgment should be DENIED to de-fendant American Fidelity Assurance Com-pany. Because of the Court's analysis of the law, and the result reached, the Court finds plaintiff was entitled to the extended benefits denied by defendant American, and accordingly partial summary judgment as to liability only on this claim is GRANT-ED sua sponte to plaintiff Gregory Mitchell against defendant American Fidelity As-surance Company. *See Celotex Corp. v. Catrett*, 477 U.S. at 326, 106 S.Ct. at 2554.

For purposes of trial this Order shall be utilized pursuant to Fed.R.Civ.P. 56(d). This Order is entered pursuant to Fed. R.Civ.P. 54(b) and is not a final Order sub-ject to an Entry of Judgment. Fed. R.Civ.P. 58.

IT IS SO ORDERED.