935 F.2d 796
 33 ERC 1603, 22 Envtl. L. Rep. 20,091
 UNITED STATES of America, Plaintiff-Appellee,
v.
CONFEDERATE ACRES SANITARY SEWAGE AND DRAINAGE SYSTEM, INC.,
Defendant-Appellee,
and
Natural Resources and Environmental Protection Cabinet of
the Commonwealth of Kentucky, Third Party Defendant,
and
Louisville and Jefferson County and Metropolitan Sewer
District, Defendant-Appellant.
 No. 90-6072.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 29, 1991.
Decided June 11, 1991.
Rehearing and Rehearing En Banc
Denied Aug. 22, 1991.
 
 1
 Joseph M. Whittle, U.S. Atty., Richard A. Dennis, Asst. U.S. Atty., Office of U.S. Atty., Louisville, Ky., Robert L. Klarquist, Jeffrey P. Kehne (argued), and Anna Thode, U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for U.S.
 
 
 2
 Richard L. Masters (argued), Evans, Bishop, Masters & Mullins, Allen K. Gailor, Louisville, Ky., for defendant-appellee.
 
 
 3
 Laurence J. Zielke and Charles F. Merz (argued), Pedley, Ross, Zielke, Gordinier & Porter, Louisville, Ky., for defendant-appellant.
 
 
 4
 Before JONES and SUHRHEINRICH, Circuit Judges, and FEIKENS, Senior District Judge.*
 
 
 5
 FEIKENS, Senior District Judge.
 
 
 6
 The United States brought suit in federal district court against Confederate Acres Sanitary Sewage and Drainage System ("Confederate Acres"), a private wastewater treatment plant, for violations of the Clean Water Act ("CWA"), 33 U.S.C. Secs. 1251-1387. The district court found that Confederate Acres was in violation of the CWA and attempted to fashion an appropriate remedy. As part of that remedy, the court allowed the Louisville and Jefferson County Metropolitan Sewer District ("MSD"), a public sewage treatment facility, to be joined as a defendant, and ordered MSD to construct an interceptor line diverting wastewater flow away from Confederate Acres and into MSD's treatment system. The court, however, refused to address whether such a diversion would constitute a "taking" by MSD under state or federal law. The court stated that those issues were more properly left to the state courts of Kentucky. MSD appeals that decision.
 
 
 7
 Two issues are before this court on appeal: (1) whether the district court erred when it refused to strike from its opinion any implication that Confederate Acres may have actionable "taking" claims under state or federal law; and (2) whether the district court abused its discretion in declining to address those claims.
 
 
 8
 For the reasons set forth below, we hold that the district court did not abuse its discretion in either respect.
 
 I. Background
 
 9
 In September 1985, the United States filed an enforcement action against Confederate Acres in the United States District Court for the Western District of Kentucky. The complaint alleged that since October 1982 Confederate Acres had been discharging pollutants into waters of the United States without an NPDES permit, a continuing violation of Section 301 of the CWA.[1] The complaint sought civil penalties and an injunction prohibiting Confederate Acres from resuming discharges until it had obtained a valid NPDES permit.
 
 
 10
 On May 12, 1988, the district court granted the United States' motion for partial summary judgment on the issue of liability. The court determined that Confederate Acres had violated the CWA, but did not address the problem of how to end Confederate Acres' continuing violations of the CWA without interrupting service to Confederate Acres' customers. In July 1989, the United States moved to join MSD in this litigation under Federal Rule of Civil Procedure 19(a), arguing that the court could both end Confederate Acres' CWA violations and protect public health by involving MSD in the remedy.[2] MSD indicated that it would not oppose the joinder.
 
 
 11
 Concurrently, the United States asked for an injunction directing MSD to divert and treat sewage from the Confederate Acres system and prohibiting Confederate Acres from interfering with MSD's annexation of its system. MSD filed a memorandum supporting the United States, stating that "MSD st[ood] ready, willing, and able to accept and treat sewage currently being treated by Confederate Acres" and that "there appear[ed to be] no other way to remedy Confederate Acres['] violation of the Clean Water Act."
 
 
 12
 Confederate Acres opposed the requested injunctive relief, arguing that under KY 65.115(1)[3], MSD should not be permitted to annex Confederate Acres' system before compensating the company for the portion of its underground lines that had not been effectively ceded to residents of its service area, and for the loss of its customers and their revenue-producing capabilities.
 
 
 13
 On March 8, 1990, the district court issued a memorandum opinion granting the requested injunction and directing MSD to connect an intercepting line to divert sewage from Confederate Acres into MSD. The court rejected Confederate Acres' argument that the connection should await resolution of the legal dispute over Confederate Acres' entitlement to compensation for the loss of sewer pipes and customers, stating that any "taking" brought about by MSD's compliance with the injunction could be redressed in the state courts.
 
 
 14
 MSD moved the district court to amend the memorandum by deleting any implication that Confederate Acres may have actionable "taking" claims in state court, and to rule that MSD's actions in compliance with the court's order would not result in a "taking." MSD further asked the court to rule that KRS 65.115 does not apply to this case because MSD's decision to divert and treat sewage from Confederate Acres came as a result of a court order, not from a unilateral initiative of MSD.
 
 
 15
 The district court denied MSD's motion. MSD now appeals to this court.
 
 II. Analysis
 
 16
 MSD first argues that the district court's opinion erroneously implies that Confederate Acres has an actionable "taking" claim under KRS 65.115 in Kentucky state courts. The specific statement MSD objects to is this:
 
 
 17
 If the issuance of an injunction by this court involves the taking of private property by MSD, redress may be sought in state courts (emphasis added).
 
 
 18
 MSD apparently is concerned that this statement represents a holding of the district court and will have preclusive effect against MSD in the state courts of Kentucky. MSD's concern is misplaced. Because the district court's statement is mere dicta, it does not bar MSD from challenging the applicability of KRS 65.115 to any "taking" claims which Confederate Acres might raise in state court. Accordingly, the district court's refusal to strike this statement from its opinion cannot be considered error.
 
 
 19
 MSD next argues that the district court abused its discretion by refusing to address whether MSD's compliance with the court's injunction involves a "taking" under KRS 65.115 and the Just Compensation Clause of the fifth amendment of the United States Constitution. MSD contends that since federal courts have exclusive jurisdiction to redress violations of the CWA under 33 U.S.C. Sec. 1319(b), the district court must also resolve the "taking" issue implicated by MSD's compliance with the injunctive order. We disagree.
 
 
 20
 First, Confederate Acres' potential "taking" claims against MSD were not before the district court. Confederate Acres never presented a cross-claim for compensation from MSD and the court properly declined to infer one. Under Federal Rule of Civil Procedure 13(g), cross-claims against co-defendants are permissive. See, e.g., Answering Service, Inc. v. Egan, 728 F.2d 1500, 1503 (D.C.Cir.1984). The district court, therefore, could not compel Confederate Acres to litigate its potential "taking" claims before the district court.
 
 
 21
 Secondly, even if Confederate Acres had raised a "taking" claim in the court below, the court had discretion not to hear it. Adjudication of state law claims are under the district court's ancillary jurisdiction and are therefore heard as matter of discretion, not of plaintiffs' right. See, e.g., Coleman v. Casey County Board of Education, 686 F.2d 428, 430 (6th Cir.1982), citing United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).
 
 
 22
 In exercising that discretion, a district court "should avoid needless decisions of state law ... both as a matter of comity and to promote justice between the parties by procuring for them a surer-footed reading of applicable law." Grubb v. W.A. Foote Memorial Hospital, Inc., 741 F.2d 1486, 1499 (1984). This rule is based on the desirability of having a reliable and final determination of state claims made by state courts--which have more familiarity with the controlling principles and the authority to render a final judgment. Id. See also, Borax Consolidated v. City of Los Angeles, 296 U.S. 10, 56 S.Ct. 23, 80 L.Ed. 9 reh'g denied, (1935) (issues involving property rights created by state law are more appropriately decided in state courts); Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (the doctrine of abstention requires that, under some circumstances, a federal court must refrain from exercising its jurisdiction where a constitutional issue rests on unsettled interpretation of state law).
 
 
 23
 Here, the district court decided that the state courts of Kentucky are in a better position to determine whether KRS 65.115 mandates just compensation in a situation such as this, where a public treatment facility intercepts sewage from a private treatment facility pursuant to a court order and not based on the unilateral initiative of the public facility. We cannot say that the district court abused its discretion in so deciding.
 
 
 24
 MSD also contends that the district court abused its discretion in refusing to address Confederate Acres' potential right to compensation under the fifth amendment of the Constitution. Again, we note that Confederate Acres never raised a formal cross-claim against MSD seeking this type of relief. However, even if it had, the district court properly could have declined to hear it because, "[a] property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State." Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 195, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985); Hammond v. Baldwin, 866 F.2d 172, 178-79 (6th Cir.1989). Therefore, a cross-claim based on the Just Compensation Clause would not have been ripe for determination until Confederate Acres' state law remedies proved unavailing.
 
 
 25
 Finally, we note that we are somehwat puzzled by the position taken by the United States Environmental Protection Agency ("EPA") in this appeal. The EPA brought this action in the district court, secured the remedy it suggested from that court, and now opposes the resolution of the "taking" issues by that court. Although we clearly hold that the district court had discretion not to address "taking" issues, we are nevertheless concerned that matters such as this are handled in the most efficient and economical way possible. A vigorous presentation by the EPA in support of the resolution in "taking" issues might have influenced the district court to exercise its discretion to decide such issues.
 
 
 26
 The district court's decision not to address Confederate Acres' potential claims for just compensation under state or federal law is AFFIRMED.
 
 
 27
 IT IS SO ORDERED.
 
 
 
 *
 The Honorable John Feikens, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The Federal Water Pollution Control Act Amendment of 1972 ("Clean Water Act" or "CWA"), 33 U.S.C. Sec. 1251, et seq., prohibits the discharge of any pollutant, including effluent from sewage treatment plants, into waters of the United States, except in accordance with a permit under the National Pollution Discharge Elimination System ("NPDES")
 
 
 [2]
 MSD is a public corporation and political subdivision of the Commonwealth of Kentucky. It was created in 1948 to develop a comprehensive sewer system in Jefferson County, Kentucky
 
 
 [3]
 KRS 65.115(1) provides that:
 The provisions of any other law, rule or regulation notwithstanding, if any city, county, public body, corporate or politic or special district or subdistrict, other than an urban county, furnishes, or proposes to furnish, sewage treatment utility services to customers of another sewage treatment utility, then such city, county, public body, district or subdistrict taking over or proposing to take over the customers, shall pay just compensation for such installations prior to the time the customers are taken over. If an agreement for compensation is not reached, then just compensation for the installations shall be payable by said city, county, public body, district or subdistrict after condemnation as provided for in the Eminent Domain Act of Kentucky.