[No. 28174-7-I.   Division One.   July 27, 1992.]

CITIZENS FOR A SAFE NEIGHBORHOOD, ET AL, *Respondents*, v. THE CITY OF SEATTLE, ET AL, *Appellants.*

*Mark H. Sidran, City Attorney,* and *Robert D. Tobin, Assistant; Karen M. McGaffey, J. Peter Shapiro,* and *Bogle & Gates,* for appellants.

*Roger M. Leed* and *Roger M. Leed, P.S.,* for respondents.

GROSSE, C.J. — This is an appeal from a decision of the Superior Court which reversed an administrative decision of the City of Seattle regarding the appropriate application of the City's land use policies. We reverse the Superior Court and reinstate the administrative decision.

Through the special needs housing program, the Seattle Department of Community Development funded the purchase of a house to provide housing for six homeless, low income women recovering from alcohol and/or other chemical dependency. The house is owned and operated by the Lutheran Compass Center through its Compass Center Housing Development Group (hereinafter Compass). A prerequisite to moving into the home is that the occupants must have successfully completed a residential inpatient treatment program and must be considered to be in transition to a normal life. The six women would be housed together with a resident house manager who would be responsible for enforcing house rules, facilitating house meetings, and minimal case management services. The City classified the house as a single-

family residence under Seattle Municipal Code (SMC) 23.84-.012.[1]

A number of people who live in the neighborhood formed a group called Citizens for a Safe Neighborhood (Citizens) to fight the City's classification of the house as a single-family residence. Citizens' espoused interest is to preserve the identity of the neighborhood and to protect itself from encroachments and from the changing nature of the neighborhood. Citizens and the named individual plaintiffs contend the house is a "halfway house" as defined in SMC 23.84.016.[2] If the house is a halfway house, a conditional use permit is necessary.

Citizens challenged the City's interpretation of the zoning ordinance, initially requesting a code interpretation from the director of the Seattle Department of Construction and Land Use (DCLU). The director concluded the use was a single-family residence. Thereafter, Citizens appealed the director's interpretation to the city hearing examiner. After hearing, the examiner affirmed the DCLU's interpretation that the use was a single-family residence. Citizens then appealed the interpretation to the superior court pursuant to SMC 23.88.020. The trial court concluded the hearing examiner made an error of law and the decision was arbitrary and/or capricious in that the hearing examiner failed to properly

---

[1] SMC 23.84.012 defines family:
" 'Family' means a nonprofit housekeeping unit consisting of any number of related persons, eight (8) or fewer nonrelated, nontransient persons or eight (8) or fewer related and nonrelated, nontransient persons . . .".

[2] SMC 23.84.016 defines halfway house:
" 'Halfway house' means a special residence operated with full-time supervision for housing resident persons who, by reason of their mental or physical disability, addiction to drugs or alcohol or family and social adjustment problems, require a transitional nonmedical treatment program for rehabilitation and social readjustment. For the purposes of this Land Use Code, a nonmedical treatment program consists of counseling, vocational guidance, training, group therapy and other similar rehabilitative services for residents of the halfway house, but does not include drug and/or alcohol detoxification. Monitoring the taking of prescription medication shall be permitted."

consider evidence relating to whether the proposed program was a "nonmedical treatment program" within the meaning of the ordinance. Further, the trial court held the hearing examiner failed to properly consider evidence relating to the degree and extent of supervision of the residents by Compass through its housing manager and transitional housing coordinator. The trial court therefore reversed the decision of the hearing examiner and remanded the matter to the City for the determination of whether a conditional use permit should be issued for this use under the zoning code.

The City and Compass appeal. They claim the trial court impermissibly substituted its judgment for that of the hearing examiner and, further, that Citizens did not have standing to bring the action in the court below.

On appeal to this court, we review the administrative record and do not rely on the Superior Court's findings of fact and conclusions of law. *Grader v. Lynnwood*, 45 Wn. App. 876, 880, 728 P.2d 1057 (1986). A reviewing court will overturn a governmental body's decision only if it is arbitrary, capricious or contrary to law. *Balser Invs., Inc. v. Snohomish Cy.*, 59 Wn. App. 29, 36, 795 P.2d 753 (1990) (citing *Mall, Inc. v. Seattle*, 108 Wn.2d 369, 374, 739 P.2d 668 (1987)). A decision is arbitrary and capricious if it is

willful and unreasonable action, without consideration and a disregard of facts or circumstances. Where there is room for two opinions, action is not arbitrary and capricious when exercised honestly and upon due consideration though it may be felt that a different conclusion might have been reached.

*Buell v. Bremerton*, 80 Wn.2d 518, 526, 495 P.2d 1358 (1972).

From this language several principles are distilled. First, an error in judgment is not arbitrary and capricious. A judicial conclusion that the administrative decision was erroneous is not sufficient. Second, the action essentially must be in disregard of the facts and circumstances involved. Third, the court necessarily looks to the facts before the administrative agency.

*State v. Ford*, 110 Wn.2d 827, 830-31, 755 P.2d 806 (1988).

It is a well established rule of statutory construction that considerable judicial deference should be given to the construction of an ordinance by those officials charged with its enforcement. *Keller v. Bellingham*, 92 Wn.2d 726, 731, 600 P.2d 1276 (1979); *Morin v. Johnson*, 49 Wn.2d 275, 279, 300 P.2d 569 (1956). In the context of a zoning case, this court has explained the reasons for this rule of deference as follows:

> The primary foundation and rationale for this rule is that considerable judicial deference should be accorded to the special expertise of administrative agencies. Such expertise is often a valuable aid in interpreting and applying an ambiguous statute in harmony with the policies and goals the legislature sought to achieve by its enactment. At times, administrative interpretation of a statute may approach "lawmaking," but we have heretofore recognized that it is an appropriate function for administrative agencies to "fill in the gaps" where necessary to the effectuation of a general statutory scheme. It is likewise valid for an administrative agency to "fill in the gaps" via statutory construction — as long as the agency does not purport to "amend" the statute.

*Mall, Inc. v. Seattle*, 108 Wn.2d at 377-78 (quoting *Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 448, 536 P.2d 157 (1975)).

In the case before this court, we find there are two plausible constructions of whether the facts fit a "halfway house" or "single family" definition. Given the standard of review, we believe the trial court improperly substituted its interpretation and judgment for that of the hearing examiner.

The question is whether the trial court considered the expertise of the agency which is charged with the enforcement and interpretation of the code. As stated above, considerable judicial deference should be given to the construction of an ordinance by those officials charged with its enforcement. *Keller v. Bellingham*, 92 Wn.2d 726, 731, 600 P.2d 1276 (1979); *Morin v. Johnson*, 49 Wn.2d 275, 279, 300 P.2d 569 (1956). The trial court reversed the hearing examiner's ruling because it found the examiner failed to properly consider evidence relating to whether the program was a nonmedical treatment program and the extent of the supervision of the residents. However, a reading of the find-

ings and decision of the hearing examiner for the City of Seattle belies the trial court's ruling.[3]

---

[3]Specifically, in its findings and decision, the hearing examiner set out the following conclusions:

"8. The question of whether or not this household would be properly defined as a 'halfway house' rests upon two factors spelled out in the code: 1) full-time supervision, and 2) what type of treatment program would be required by these residents for their rehabilitation and social readjustment.

"9. The House Manager would not provide full-time supervision. This person would not be available 24-hours per day and would not have the kinds of authority necessary to direct and control the behavior of the residents that would be necessary to be classed as 'supervision' as that term is commonly understood.

"10. Parties at hearing proffered views as to whether or not the residents *should* have full-time (i.e., 24-hour) supervision. The code definition for halfway house looks to a facility where the full-time supervision *is* provided rather than the arguable question of whether it *should* be provided. Here the requirement for full-time supervision is not met.

"11. The record indicates that a reasonable person could conclude that the residents would not need full-time supervision and it is on that basis that it is not proposed.

"12. The second part of the halfway house definition must be carefully examined because, unlike the provision for full-time supervision, it is keyed to what the residents *should* be provided, rather than what *is* provided. The code speaks of resident persons who, because of their addiction to drugs or alcohol, *require* a transitional nonmedical treatment program for their rehabilitation and readjustment. There are some elements which can be fairly considered to be nonmedical services intended to aid in the transition from homeless, users of alcohol or drugs, to stable, productive, soberiety [*sic*]. These services, however, are not *required* by the residents. The residents will have already successfully completed a treatment program. When they live in this house they will have progressed far enough in their transition, so that they will be able to choose to avail themselves of services as they deem appropriate.

"13. Not everyone in 'transition' needs the same degree of care, supervision, and program services. This instance does not fit neatly into one category. The Director did not err in making the interpretation that in this circumstance this household is more appropriately considered as a single family residence than as a halfway house. The facts do not leave the examiner with the definite and firm conviction that a mistake has been committed. While reasonable minds may disagree, and some may debate due to their individual viewpoints, and others may prefer different definitions and standards of review, the record supports the Director as having made a valid interpretation. Other circumstances, where residents require more control, monitoring, and a more intense program of services to accomplish their rehabilitation and adjustment, could produce a different result."

The decision of the hearing examiner cannot be said to be arbitrary and capricious or an error of law. Although reasonable minds may differ as to whether this use is a single-family use or a halfway house, the decision of the hearing examiner is not wholly unreasonable. The trial court's substitution of its judgment for that of the examiner, albeit not wholly unreasonable either, failed to properly defer to the decision of the examiner.

Because of our holding, the issue of whether Citizens or the individual plaintiffs have standing to bring this action need not be addressed. The decision of the trial court is reversed and the decision of the hearing examiner upholding the determination of the director of DCLU is reinstated.

COLEMAN and FORREST, JJ., concur.

Review denied at 120 Wn.2d 1020 (1993).