**UNITED STATES of America,**

v.

**GULF PARK WATER COMPANY, INC., Johnson Properties, Inc., Glenn Johnson and Michael Johnson.**

**Civil Action No. 1:93–cv–622(Br)(R).**

United States District Court,
S.D. Mississippi,
Southern Division.

April 21, 1997.

William A. Weinischke, U.S. Dept. of Justice, Washington, DC, Lori Jonas, U.S. Dept. of Justice, Environmental and Natural Resources Div., Environmental Enforcement Section, Washington, DC, for Plaintiff.

Gerald H. Blessey, Biloxi, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

BRAMLETTE, District Judge.

This cause is before the Court on motion by the United States of America (on behalf of the United States Environmental Protection Agency ("EPA")) for partial summary judgment (**docket entry no. 90**), and on motion by the defendants Gulf Park Water Company, Inc., Johnson Properties, Inc., Glenn Johnson and Michael Johnson for summary judgment (**docket entry no. 101**). Having carefully considered the motion and response, the memoranda and all supporting documents, the Court finds as follows:

This is a civil action brought pursuant to section 309(b) of the Clean Water Act ("the Act" or "CWA"), 33 U.S.C. § 1319(b), for civil penalties and injunctive relief for violations of section 301 of the Act, 33 U.S.C. § 1311. The plaintiff's motion seeks summary judgment on the issue of defendants' liability under the CWA.

The defendants Gulf Park Water Company, Inc., Johnson Properties, Inc., Glenn K. Johnson and Michael Johnson are owners and operators of a wastewater treatment fa-cility (the "facility") in Jackson County, Mississippi. The defendants' facility treats primarily residential wastewater and discharges effluent directly into a tributary leading to the Mississippi Sound. The United States alleges that from 1988 to the present, the defendants continuously violated the CWA by discharging pollutants which may not be discharged into the tributary or the Mississippi Sound without a National Pollutant Discharge Elimination System ("NPDES") permit issued by the State of Mississippi or the EPA.

Defendant Gulf Park Water Company is a corporation organized under the laws of, and doing business in, the State of Mississippi. Gulf Park is a water and sewer utility company located in Jackson County, Mississippi, near Ocean Springs, Mississippi. The facility is a wastewater treatment plant that services 335 residential and 8 commercial users.

Defendant Johnson Properties, Inc., is a corporation organized under the laws of, and doing business in, the State of Mississippi. Johnson Properties owns, controls and operates defendant Gulf Park as its corporate parent.

Defendant Glenn K. Johnson controls the operations of the Gulf Park facility. He personally and directly participates in the management and operations of the facility, is its General Manager, and has held himself out as the operator of the facility in permit applications. He has also continually acted as Gulf Park's point of contact with State regulators.

Defendant Michael Johnson, Glenn Johnson's son, is the sole shareholder of Johnson Properties, which in turn owns 100% of Gulf Park Water Company. Michael Johnson also exercises day-to-day control over the facility's workings. Michael Johnson has also held himself out as the operator of the facility and is, in fact, its operator.

Until 1985, Gulf Park disposed of its treated effluent through an arrangement with a local golf course. The course agreed to accept the effluent for land application. The State of Mississippi issued a permit "to operate a wastewater disposal system with no discharge" to Gulf Park for this disposal.

The permit specified that: "The discharge from this facility shall cease and connection made to a regional sewer system when available in the area." A regional sewer hookup at the Gulf Coast Regional Wastewater Authority has been available for some years.

In 1983, the owner of the golf course initiated litigation to terminate the discharges. In February 1985, the Chancery Court of Jackson County ordered Gulf Park to cease its discharges. The court also ordered the facility not to discharge into the Mississippi Sound or any of its tributaries unless and until a permit was obtained from the State. The Chancery Court's order was later affirmed by the Mississippi Supreme Court. *Gulf Park Water Co. v. First Ocean Springs Dev. Co.*, 530 So.2d 1325 (Miss.1988).

Gulf Park did not obtain a permit for its discharges, and the facility commenced discharging its effluent into the Mississippi Sound in 1985. Despite efforts by the Mississippi Department of Environmental Quality to judicially and administratively force the defendants to stop the discharges, the defendants continue to discharge effluent into a waterway leading into the Mississippi Sound.

The CWA is designed to eliminate the discharge of pollutants into navigable waters. To achieve this goal, section 301(a) prohibits "the discharge of any pollutant by any person," except as permitted by the Act. 33 U.S.C. § 1311(a); *EPA v. California ex rel. State Water Resources Control Bd.*, 426 U.S. 200, 205 n. 14, 96 S.Ct. 2022, 2025 n. 14, 48 L.Ed.2d 578 (1975).

■ To control the discharge of pollutants to the nation's waters, the Act established a permitting system, the NPDES, which is the "cornerstone of the Clean Water Act's pollution control scheme." *National Wildlife Federation v. Consumers Power Co.*, 862 F.2d 580, 582 (6th Cir.1988) (*quoting Natural Resources Defense Council, Inc. v. EPA*, 822

F.2d 104, 108 (D.C.Cir.1987)). A person,[1] may discharge pollutants into the navigable waters of the United States only after obtaining, and in accordance with, an NPDES permit. *Save the Bay, Inc. v. Administrator of EPA*, 556 F.2d 1282, 1284–85 (5th Cir.1977). The issuance of an NPDES permit provides "a potential would-be discharger the only escape from an otherwise total prohibition (on discharging pollutants) imposed by" the Act. *United States v. Town of Lowell*, 637 F.Supp. 254, 255–56 (N.D.Ind.1985). *See also National Wildlife Federation v. Consumers Power Company*, 862 F.2d 580, 582–83 (6th Cir.1988); *Natural Resources Defense Council v. EPA*, 822 F.2d at 108.

The NPDES program authorizes the federal or state permitting authority to issue a permit to a facility which allows the facility to discharge pollutants, subject to effluent limitations[2] and other terms and conditions. 33 U.S.C. § 1342. Specifically, section 402(a) of the Act, 33 U.S.C. § 1342(a), provides that the Administrator of the EPA, after providing an opportunity for a public hearing, may issue an NPDES permit which meets the conditions set forth in the Act. A State may also issue NPDES permits, if authorized by the EPA. *See* 33 U.S.C. § 1342(b).

■ Enforcement of the CWA is designed to be simple, speedy and straightforward. *United States v. CPS Chemical Co., Inc.*, 779 F.Supp. 437, 442 (E.D.Ark.1991); *Chesapeake Bay Foundation v. Bethlehem Steel*, 608 F.Supp. 440, 452 (D.Md.1985). In addition, compliance with the CWA is a matter of strict liability. Therefore, a defendant's intentions to comply or a good faith effort to do so do not excuse a violation. *CPS Chemical*, 779 F.Supp. at 442; *Connecticut Fund for Environment, Inc. v. Upjohn Co.*, 660 F.Supp. 1397, 1409 (D.Conn.1987); *Student Public Interest Research Group of New Jer-*

---

1. The term "person" means an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body. 33 U.S.C. § 1362(5).

2. Section 502(11) of the Act, 33 U.S.C. § 1362(11), defines the phrase "effluent limitation" as:

any restriction established by a State or the Administrator on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters, the waters of the contiguous zone, or the ocean, including schedules of compliance.

sey, Inc. v. Monsanto Co., 600 F.Supp. 1479, 1485 (D.N.J.1985).

Whenever the EPA finds that a person is in violation of the Act or any condition or limitation of an NPDES permit, it may bring a civil enforcement action seeking appropriate relief, including injunctive relief and civil penalties. 33 U.S.C. § 1319(a)(3), (b) and (d). Any person who violates the Act, or any permit condition or limitation, is subject to a civil penalty not to exceed $25,000 for each day of each violation. 33 U.S.C. § 1319(d).

Fed.R.Civ.P. 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See also South Central Bell v. Canal Place Limited Partnership, 927 F.2d 867, 868 (5th Cir.1991). The Supreme Court has shown its preference for the use of summary judgment proceedings under Rule 56 as a means to "isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant is entitled to summary judgment if there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.

To show that there is a "genuine" issue of fact for trial, there must be "sufficient evidence favoring the nonmoving party to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). If the evidence is "merely colorable" or "not sufficiently probative ... summary judgment may be granted." Id. at 249–50, 106 S.Ct. at 2511 (citations omitted). A "fact" set forth by the nonmoving party to defeat summary judgment is not "material" unless it will be "outcome determinative" under applicable law. CPS Chemical, 779 F.Supp. at 443; see also Anderson, 477 U.S. at 248, 106 S.Ct. at 2511. Thus, summary judgment "correctly results from the application of substantive law to facts established beyond reasonable controversy." Woodsmith Pub. Co. v. Meredith Corp., 904 F.2d 1244, 1247 (8th Cir.

1990). For each motion, the Court affords the nonmoving party the benefit of every reasonable doubt as to whether a material issue of fact exists. The Court also requires the moving party to establish that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323, 106 S.Ct. at 2552–53.

However, once the burden of the moving party is discharged, the burden shifts to the nonmoving party to go beyond the pleadings and show that summary judgment is inappropriate. Lavespere v. Niagara Mach. & Tool Works, 910 F.2d 167, 178 (5th Cir.1990). Unsupported allegations setting forth ultimate facts or conclusions of law are insufficient to defeat a motion for summary judgment. See Galindo v. Precision American Corp., 754 F.2d 1212 (5th cir.1985). To avoid summary judgment, the nonmoving party must create a genuine dispute as to "material facts," i.e. facts that might affect the outcome of the case under governing law. See Thomas v. LTV Corp., 39 F.3d 611, 616 (5th Cir.1994).

Summary judgment is particularly appropriate in a CWA case because Congress provided for streamlined and straightforward enforcement:

[o]ne purpose of the [monitoring] requirement is to avoid the necessity of lengthy fact finding, investigations, and negotiations at the time of enforcement. Enforcement of violations of this Act should be based on relatively narrow fact situations requiring a minimum of discretionary decision making or delay.

CPS Chemical, 779 F.Supp. at 442 (quoting S.Rep. No. 414, 92nd Cong., 1st Sess. 64 (1971), reprinted in 1972 U.S.Code Cong. & Ad. News 3668, 3730). Congress intended to make issues that could be technically complicated easier to enforce by limiting the factual issues so that "the factual basis for enforcement of requirements would be available at the time enforcement is sought, and the issue before the court would be a factual one of whether there had been a compliance." Id.; see also Chesapeake Bay Found., 608 F.Supp. at 451–53 (granting summary judgment, reasoning, in part, that "Congress in-

tended to keep enforcement actions simple and speedy").

Courts have not hesitated to grant summary judgment as to liability in CWA cases based on the permittee's violations of the Act, the permit's conditions and limitations. *CPS Chemical,* 779 F.Supp. at 442–43. Since no NPDES permit was obtained in the instant case, the plaintiff simply argues that every discharge of pollutants by the defendants was a violation of the CWA.

■ To establish liability, the United States must show that the defendants are (1) "discharging pollutants" (2) into "navigable waters" of the United States (3) without an NPDES permit. *See Sierra Club v. Cedar Point Oil Co., Inc.,* 73 F.3d 546, 1996 WL 11077, *9 (5th Cir. Jan.11, 1996).

■ The CWA definition of "pollutant" includes sewage, sewage sludge, biological materials and municipal waste. 33 U.S.C. § 1362(6). Effluent from sewage treatment plants is therefore a pollutant under the Act. *United States v. Confederate Acres Sanitary Sewage and Drainage Sys.,* 935 F.2d 796, 798 n. 1 (6th Cir.1991). The defendants admit that their facility discharge [3] treated wastewater effluent. (Answer to Amended Complaint, para. 15).

The Act defines "navigable waters" as "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). This definition is interpreted broadly. *Avoyelles Sportsmen's League, Inc. v. Marsh,* 715 F.2d 897, 914 (5th Cir.1983); *see also Weiszmann v. District Engineer,* 526 F.2d 1302, 1305 (5th cir.1976) (holding man-made canal hooked up to river system to be a "navigable water"). The defendants have admitted that the discharge from their facility flows into bayous that eventually reach the Mississippi sound. Thus, there is no genuine issue of fact as to whether the facility's discharge is to "navigable waters."

It is also undisputed that the defendants do not have an NPDES permit. *See* Defendant's Third Party Complaint, para. 4 ("Gulf Park did not have a permit to discharge its sewer effluent into the waters near the Mississippi Sound.").

■ Because the three elements of liability have been admitted by the defendants, Gulf Park is clearly liable under the CWA. The remainder of the plaintiff's motion seeks summary judgment on the issue of liability against the other defendants.

Johnson Properties is the parent company of Gulf Park Water Co. Although limited liability is the general rule in American corporation law, there are equitable exceptions, as where, for example, "a parent totally dominates and controls its subsidiary, operating the subsidiary as its business conduit or agent." *United States v. Jon–T Chemicals, Inc.,* 768 F.2d 686, 691 (5th Cir.1985), *cert. denied,* 475 U.S. 1014, 106 S.Ct. 1194, 89 L.Ed.2d 309 (1986); *see also In re Acushnet River & New Bedford Harbor Proceedings,* 675 F.Supp. 22, 33 (D.Mass.1987) ("The federal common law in this area emerges from the general principle that 'a corporate entity may be disregarded in the interests of public convenience, fairness and equity.' ").

■ The Fifth Circuit has identified certain factors for determining whether a subsidiary is the alter ego of its parent, therefore making the parent liable for the torts of its subsidiary. There include: (1) common stock ownership; (2) common directors or officers; (3) common business departments; (4) filing of consolidated financial statements and tax returns; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operates with grossly inadequate capital; (8) the parent pays the salaries and other expenses of the subsidiary; (9) the subsidiary's sole source of business is the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; and (12)

---

**3.** "Discharge" is defined as the addition of the pollutant to navigable waters from any point source. 33 U.S.C. § 1362(12). The Act's definition of "point source" is "any discernable, confined and discrete conveyance," including any pipe or container, from which pollutants are discharged. § 1362(14). The defendants admit that their effluent is discharged from a chlorine contact chamber. (Gulf Park's Response to Plaintiff's Interrogatory No. 5). A contact chamber is clearly a "point source."

the subsidiary does not observe basic corporate formalities. *Jon–T*, 768 F.2d at 691–92. The Fifth Circuit has also noted that there is no litmus test for determining whether a subsidiary is the alter ego of its parent. Rather, the resolution of the issue is heavily fact specific. *Id.* at 694.

In the instant case, there are uncontested facts concerning most, if not all, of the factors articulated by the Fifth Circuit. Johnson Properties is the sole stock holder of Gulf Park Water Co. Both corporations have the same officers: Montell T. Watkins is President, Daren Kelly Johnson Vice–President, and Thelma Brown Secretary/Treasurer. Glenn Johnson has testified before the Public Service Commission that he is the General Manager of both Johnson Properties and Gulf Park Water Co.

The two companies share common business offices. Gulf Park is in fact run as a department of Johnson Properties out of its Vicksburg Headquarters, as are all other subsidiaries. Johnson Properties maintains 1–800 exchange phone numbers for all subsidiaries in the Vicksburg office. Montell Watkins has testified, before the Louisiana Public Service Commission, that Johnson Properties "can't afford to have every company with a separate office, separate billing system, separate everything. We keep our expenses down and survive by operating one group running several different companies." Johnson Properties files a consolidated federal income tax return for itself and all its subsidiaries, including Gulf Park.

As evidence of Johnson Properties' treating the property of Gulf park as its own, when the parent company borrowed in excess of one million dollars from Hancock Bank in 1990, it used all the personal property of Gulf Park as collateral for the loan. Included in the security agreement were all wells, pumps, tanks, distribution and collection lines, sewerage disposal plants and all pumps and equipment, as well as all franchises, permits and certificates of public convenience and necessity, and all general intangibles. Fines and other debts of Gulf Park are paid by Johnson Properties on checks drawn from Johnson Properties, Operating Account maintained in Vicksburg.

The daily operations of the two companies are also intermingled. Not only do they share the same offices, but all letters written on behalf of Gulf Park are on Johnson Properties' letterhead. Employees for Gulf Park, such as Montell Watkins, are paid by Johnson Properties. Michael Johnson, the operator of the Gulf Park facility, is also paid by Johnson Properties. In fact, in its 1991 annual report to the Mississippi Public Service Commission, Gulf Park reported that it had no employees and that it was managed by Johnson Properties.

The plaintiff has also produced evidence that Gulf Park is undercapitalized. Gulf Park has represented that repairs could not be made to its facility because of lack of funds, and that it could not afford to conduct a Hydrostatic test.

In the state court proceedings, the Chancery Court of Jackson County found that Johnson Properties:

> owns, controls, and administers the entire property of Gulf Park Water Company, Incorporated, and operates Gulf Park's business as a department of Johnson Properties, Inc. Gulf Park is managed for the primary interest of Johnson Properties. Gulf Park is controlled and manipulated by Johnson Properties' purposes and interests and to the prejudice of the public welfare. Gulf Park is the alter ego and mere agent of Johnson Properties, Inc.

In their memorandum brief before this Court, the defendants argue that "Johnson Properties and subsidiaries have a sophisticated accounting system realizing an economy of scale for numerous subsidiaries in the administration, bookkeeping and non-operational aspects of the three-tiered corporate structure." (Defendants' Memorandum, p. 5). "Sophistication" and "economy of scale" are not factors mentioned by the Fifth Circuit. Cost-effectiveness is in fact irrelevant to the issue. The defendants have further shown that each subsidiary has its own checking account, its own tariff, and receives its own permits. Also, the subsidiary corporations file separate state income and franchise tax returns (although they file consolidated federal income tax returns, see *supra* ).

These facts, while relevant, are insufficient to create genuine issues as to the overall effect of the corporate structure and operations. As a matter of law, the Court finds that the factors as a whole permit only one conclusion: that Gulf Park is a mere alter ego of Johnson Properties and "may be disregarded in the interests of public convenience, fairness and equity."

Section 309 of the CWA, 33 U.S.C. § 1319(a)(1), also provides for individual liability in appropriate cases. This section states that "any person" violating specific provisions of the Act may be subject to enforcement action. The statutory definition of "person" specifically includes "individuals." 33 U.S.C. § 1362(5). This language expresses Congress' intent to hold individuals responsible for violations of the Act. *See United States v. Brittain,* 931 F.2d 1413, 1419 (10th Cir.1991) (finding that statutory definition of "person" includes individuals and is not limited to the permit holder).

■ Individuals can be liable for violations of the Act where they participated in or were responsible for the violations, even when the individuals purport to act through a corporate entity. *See id.; United States v. Ciampitti,* 583 F.Supp. 483 (D.N.J.1984); *United States v. Frezzo Brothers, Inc.,* 461 F.Supp. 266 (E.D.Pa.1978), *aff'd,* 602 F.2d 1123 (3d Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980).

In *Brittain,* the defendant had primary operational responsibility for the treatment plant, he physically observed the permit violations, he was informed by an employee that the violations were prone to occur, and he instructed employees not to make reports of the violations to the EPA. 931 F.2d at 1420. The Tenth Circuit found that the evidence of "specific conduct which allowed the illegal discharge to occur" was sufficient to uphold a conviction for negligent discharge of pollutants. *Id.*

■ The ability to control the facility, coupled with knowledge of the violation, is also sufficient to impose liability under the CWA. In *Frezzo Brothers,* the district court found that in addition to being owners of the facility, the defendants held themselves out as responsible officials to state investigators, they had knowledge of the illegal discharges, and they indicated control of the facility. 461 F.Supp. at 270.

In *Ciampitti,* the individual defendant was the designated agent and representative for the corporate defendant charged with illegally filling wetlands. The district court noted that Ciampitti had both control of the filling activities and knowledge of the CWA regulations. In spite of warnings from the Corps of Engineers, Ciampitti continued to order the filling.

A number of other cases construing federal environmental statutes have stressed personal participation as the basis for individual liability. *See Riverside Market Dev. Corp. v. International Building Products, Inc.,* 931 F.2d 327 (5th Cir.1991) (law "prevents individuals from hiding behind the corporate shield when, as 'operators,' they themselves actually participate in the wrongful conduct prohibited by [CERCLA]"); *United States v. Northeastern Pharmaceutical & Chemical Co., Inc.,* 810 F.2d 726, 745 (8th Cir.1986) (plant supervisor who "personally arranged for the disposal of hazardous substances" individually liable as an operator under CERCLA), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987); *United States v. Production Plated Plastics, Inc.,* 742 F.Supp. 956, 963 (W.D.Mich.1990) (corporate officers and employees who actually make the corporation's decisions are personally liable under RCRA), *cert. denied,* 506 U.S. 820, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992).

■ Courts have also found corporate officers liable for acts under a tort theory. "It is well settled law that when corporate officers directly participate in or authorize the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motors Acceptance Corp. v. Bates,* 954 F.2d 1081, 1085 (5th Cir.1992) (internal citation omitted) (construing Mississippi law). The same theory has been applied by the federal courts in environmental cases. *See Northeastern Pharmaceutical,* 810 F.2d at 745 ("imposing liability upon only a corporation, but not those corporate officers and employees who actually make corporate decisions, would be

inconsistent with Congress' intent to impose liability upon the persons who are involved in the handling and disposal of hazardous substances.").

Although not designated an officer of Gulf Park, Glenn Johnson controls the decisions of Gulf Park and Johnson Properties and is the "manager" or "operator" of the Gulf Park facility. He has been identified as the former president of Gulf Park, its General Manager, and a person with knowledge of the discharge of effluent into the Mississippi Sound. The record developed during the state court proceedings demonstrates that Glenn Johnson held himself out as being in ultimate control of Gulf Park Water Co. He corresponded with authorities and attended meetings and hearings on behalf of Gulf Park, specifically with regard to Gulf Park's discharges of effluent. Letters to the Mississippi Gulf Coast Regional Wastewater Authority (MGCRWA) regarding Gulf Park's compliance with the Chancery Court's 1985 orders were written on Johnson Properties' letterhead and signed by Glenn Johnson as president of Gulf Park. These letters refer to meetings between the MGCRWA and Glenn Johnson to discuss the hookup of the Gulf Park facility to the MGCRWA treatment facility.

■ The evidence establishes that Glenn Johnson exercised sufficient actual control over the operations of Gulf Park and had sufficient personal involvement in the decision to discharge effluent into the Mississippi Sound to be individually liable.

Michael Johnson, Glenn Johnson's son, owns 100% of the stock in Gulf Park (Johnson Properties owns all the stock in Gulf Park, and Michael Johnson owns all the stock in Johnson Properties). He is an officer of Gulf Park, and also its on-site manager, who exercises day-to-day control over the operations of the facility. Glenn Johnson told the Mississippi Public Service Commission "I don't handle the day-to-day. I check on the system and give Michael and them advice on whatever they need, you know, if they run into a problem." Michael Johnson has been designated operator of the facility on permit applications, and is the operator in fact.

■ Both Michael and Glenn Johnson had actual hands-on control of the facility's activities, were responsible for on-site management, corresponded with regulatory bodies, and were directly involved in the decisions concerning environmental matters. Given the nature of this family-owned business, it is apparent that both Michael and Glenn Johnson were aware of Gulf Park's continued discharges without a permit, and that they ordered (or at least acquiesced in) the activity. Therefore, they are individually liable for violations of the CWA.

The plaintiff has demonstrated that it is entitled to summary judgment on the issue of liability of all defendants for violations of the Clean Water Act, because there is no genuine issue of any material fact. Because the defendants' motion seeks summary judgment on the same issues, and because the defendants' response to the plaintiff's motion fails to show the existence of any genuine issues of material fact, the defendants' motion shall be denied. The issue of penalties is not now before the Court, and any defenses that the defendants have in that regard will be preserved until a hearing or trial on the issue. Accordingly,

IT IS HEREBY ORDERED that the motion by the United States of America (on behalf of the United States Environmental Protection Agency) for partial summary judgment (**docket entry no. 90**) is GRANTED;

FURTHER ORDERED that the motion by the defendants Gulf Park Water Company, Inc., Johnson Properties, Inc., Glenn Johnson and Michael Johnson for summary judgment (**docket entry no. 101**) is DENIED;

FURTHER ORDERED that the following motions are deemed moot in light of this memorandum opinion and order: plaintiff's motions to strike affidavits (**docket entries no. 108 and 109**).