[No. 22715-1-II. Division Two. January 11, 1999.]

THE DEPARTMENT OF ECOLOGY, *Respondent*, v. GARY LUNDGREN, ET AL., *Appellants*.

*Greg W. Haffner* of *Vandeberg Johnson & Gandara*, for appellants.

*Christine O. Gregoire, Attorney General*, and *Ronald L. Lavigne, Assistant*, for respondent.

ARMSTRONG, J. — Gary Lundgren is the sole owner and officer of Ketron Island Enterprises (KIE), which for many years owned the sewage treatment plant on Ketron Island. When the plant failed, causing raw sewage to discharge into Puget Sound, the Department of Ecology fined both KIE and Lundgren for violating Washington's water pollution control act, RCW 90.48. Lundgren appealed to the Pollution Control Hearings Board (PCHB), which held him

not personally liable. On appeal by the Department of Ecology, the superior court ruled that Lundgren was personally liable. Lundgren contends the trial court erred by (1) failing to limit its application of the law to the facts found by the PCHB, and (2) concluding he is personally liable for violations of the water pollution control act. We affirm.

## FACTS[1]

Ketron Island is a small island in south Puget Sound. A sewage treatment system has existed on the island since the 1960s to provide waste treatment for Ketron's community of 11 residents. Ketron Island Enterprises acquired the sewage treatment system in 1980. Gary Lundgren is president and sole owner of KIE.

In November 1988, Lundgren informed the Department of Ecology (Ecology) that the sewage treatment facility was not operating and that sewage was flowing into Puget Sound. On June 23, 1990, Ecology canceled the National Pollution Discharge Elimination System (NPDES) permit for the facility and ordered KIE to cease all discharges of pollutants into state waters.[2] The permit was canceled because KIE failed to pay permit fees due for 1988-1989. Lundgren appealed the cease discharge order to the PCHB, but the PCHB rejected the appeal.

In response to citizen complaints regarding raw sewage on Ketron Island, Ecology inspected the facility in September 1993. Leaks in a line allowed sewage to discharge to the ground, to the slope that leads into the estuary, and to the waters of Puget Sound. Photographs showed vegetation, including an alder tree, growing up through the treatment facility. The wastewater treatment plant was rusted and the ground was saturated with raw sewage sludge. The

---

[1]The facts are taken from the PCHB's final findings of fact and conclusions of law.

[2]The discharge of pollutants without a valid discharge permit violates both state and federal law. *See* RCW 90.48.080 and 90.48.160. *See also* 33 U.S.C. § 1311(a) (1987). Consequently, any discharge of pollutants from the sewage treatment facility after June 23, 1990, violated both state and federal law.

fecal coliform readings greatly exceeded the effluent limits for the facility.

Lundgren expressed a willingness to correct the long-term sewage problem. But Ecology ultimately determined that Lundgren was not acting in good faith to comply with its requests. Consequently, Ecology ordered Lundgren and KIE to dismantle the sewage treatment facilities and plug the outfall to prevent further discharges of sewage into Puget Sound. Ecology also assessed a $250,000 penalty to Lundgren and KIE.[3]

In December 1994, less than two months after the assessed penalty, Lundgren, KIE, and Alaska-Northwest Industries executed a purchase agreement with Ketron Island Utility Company (KIU).[4] KIU agreed to correct the sewage problems on the island, in exchange for all of KIE's assets. The value of the assets received by KIU was recorded at $250,000.[5] Lundgren personally received a deed of trust against real property owned by KIU as security for KIU's performance.

Lundgren and KIE appealed the penalty to the PCHB. The PCHB affirmed the penalty against KIE, but held that Lundgren was not personally liable. Ecology appealed, arguing that the PCHB erroneously interpreted or applied the law when it held Lundgren not personally liable.

The trial court concluded the PCHB committed an error of law when it held Lundgren not personally liable; it therefore reversed the PCHB's decision. Lundgren appeals.

---

[3]The discharge of pollutants without a valid discharge permit is subject to a penalty of $10,000 per day. RCW 90.48.144(3). In the case of a continuing violation, every day is deemed to be a separate and distinct violation. RCW 90.48.144(3).

[4]Lundgren owns 50 percent of Alaska-Northwest and Lundgren's daughter owns the remaining 50 percent. Alaska-Northwest owns over 125 residential lots on Ketron Island.

[5]The PCHB noted that "[i]t does not appear to be a coincidence that the parties to the purchase agreement concluded that the assets conveyed were equal to $250,000, which is exactly the amount of the civil penalty which had been issued less than two months earlier."

Standard of Review

■ Appellate review of administrative action is governed by RCW 34.05.570, part of the Administrative Procedure Act. An appellate court reviews an administrative decision on the record of the administrative agency and does not rely upon the trial court's findings of fact and conclusions of law. *Citizens for a Safe Neighborhood v. City of Seattle*, 67 Wn. App. 436, 439, 836 P.2d 235 (1992).

■ ■ The reviewing court reviews conclusions of law under the error of law standard, RCW 34.05.570(3)(d), and may substitute its judgment for that of the agency. *Department of Ecology v. United States Bureau of Reclamation*, 118 Wn.2d 761, 767, 827 P.2d 275 (1992).[6]

Application of Law

Lundgren argues the trial court erred by failing to apply the law only to the facts found by the PCHB because Ecology did not challenge these factual findings.

In its petition for judicial review, Ecology asserted the PCHB erroneously applied the law and that the PCHB's order was not supported by substantial evidence. As the party challenging the order, Ecology bore the burden of demonstrating the order was not supported by substantial evidence. *Christianson v. Snohomish Health Dist.*, 82 Wn. App. 284, 287, 917 P.2d 1093 (1996), *aff'd*, 133 Wn.2d 647 (1997). But Ecology did not argue the evidence was insubstantial, but instead it stated, "[t]he only issue in this appeal is the Board's erroneous Conclusion of Law that Mr. Lundgren is not personally liable for the penalty."

■ ■ Because Ecology did not challenge any of the PCHB's factual findings, they are verities. *Seatoma Convalescent Ctr. v. Department of Soc. & Health Servs.*, 82 Wn. App. 495, 505, 919 P.2d 602 (1996), *review denied*, 130 Wn.2d 1023 (1997); *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 407, 858 P.2d 494 (1993). Accordingly, we apply

---

[6]Although deference is owed where an agency exercises special expertise, *Department of Ecology v. United States Bureau of Reclamation*, 118 Wn.2d at 767, the legal issue here is not within the scope of the PCHB's environmental expertise.

the law to the facts as found by the PCHB. And because we review the PCHB record, not the trial court's findings of fact and conclusions of law, we need not decide whether the trial court limited its application of the law to the facts found by PCHB. *Citizens for a Safe Neighborhood*, 67 Wn. App. at 439.

Personal Liability

Lundgren argues that the trial court erred in reversing the PCHB's decision and holding him personally liable for the penalty. Lundgren asserts two distinct arguments in support of his claim of error. First, because the PCHB did not find that he participated in or knowingly approved of wrongful conduct, Lundgren maintains he is not personally liable as a corporate officer of KIE. Second, Lundgren claims he is not personally liable as the sole shareholder of KIE because the PCHB did not find he intentionally used the corporation to avoid a duty to another.

Responsible Corporate Officer Doctrine

■ Lundgren asserts two procedural challenges to the application of the responsible corporate officer doctrine. Lundgren first maintains that the issue of whether he is liable as an officer was not properly raised before the PCHB and therefore cannot be addressed on appeal. Lundgren claims that "[i]t was not until the second to last page of Ecology's Reply Brief that Ecology first raised the issue of Mr. Lundgren's liability as an officer." While Lundgren concedes "there are no procedural rules applicable to the Board's proceedings that address briefing," he nevertheless urges this court to disregard a relevant body of law applicable to this case. Because we review the PCHB's conclusions of law de novo, we will consider all relevant legal arguments presented to the administrative agency to determine if an error of law was committed.

■ Lundgren also argues that the trial court improperly considered the case of *United States v. Gulf Park Water Co.*, 972 F. Supp. 1056 (S.D. Miss. 1997) which is contained in

Ecology's statement of additional authorities. Because Ecology submitted its additional authorities less than 15 days before trial, Lundgren argues the submission violated Thurston County Local Rule 5(a)(2).[7] But RAP 10.8 authorizes the filing of additional authorities without argument.[8] Thus, the trial court appropriately considered Ecology's statement of additional authorities, including *Gulf Park Water.*

 If a corporate officer participates in the wrongful conduct, or knowingly approves of the conduct, then the officer, as well as the corporation, is liable for the penalties. *State v. Ralph Williams' N.W. Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 322, 553 P.2d 423 (1976) (citations omitted).[9] This rule, known as the responsible corporate officer doctrine, was first enunciated by the Supreme Court in *United States v. Dotterweich*, 320 U.S. 277, 64 S. Ct. 134, 88 L. Ed. 48 (1943). The Court held it was appropriate to hold a corporate officer criminally liable where the officer stands "in responsible relation to a public danger." *Id.* at 281. Central to this holding was the recognition that "the only way in which a corporation can act is through the individuals who act on its behalf." *Id.*

 In *United States v. Park*, 421 U.S. 658, 95 S. Ct. 1903, 44 L. Ed. 2d 489 (1975), the Court reaffirmed *Dotterweich* and applied the responsible corporate officer doctrine to uphold the criminal conviction of an officer. The Court rejected the notion that the Government must establish "wrongful action" and explained:

---

[7]Thurston County Local Rule 5(a)(2) provides that a *reply brief* must be submitted no later than 15 calendar days before trial.

[8]While the rules of appellate procedure are generally not applicable to proceedings in the superior courts, this case involves an appeal from an administrative tribunal, which "invokes the appellate, not the general or original, jurisdiction of a Superior Court." *Reeves v. Department of Gen. Admin.*, 35 Wn. App. 533, 537, 667 P.2d 1133 (1983) (citations omitted).

[9]*See Grayson v. Nordic Constr. Co.*, 92 Wn.2d 548, 599 P.2d 1271 (1979) (refusing to pierce corporate veil but holding officer personally liable under responsible corporate officer doctrine).

The concept of a "responsible relationship" to or a "responsible share" in, a violation of the Act indeed imports some measure of blameworthiness; but it is equally clear that the Government establishes a prima facie case when it introduces evidence sufficient to warrant a finding by the trier of the facts that the defendant had, by reason of his position in the corporation, responsibility and authority either to prevent in the first instance, or promptly to correct, the violation complained of, and that he failed to do so. The failure thus to fulfill the duty imposed by the interaction of the corporate agent's authority and the statute furnishes a sufficient casual link.

*Park*, 421 U.S. at 673-74.

The responsible corporate officer doctrine has also been applied to violations of environmental laws. In *United States v. Pollution Abatement Servs. of Oswego, Inc.*, 763 F.2d 133 (2d Cir. 1985), the court imposed civil liability upon two corporate officers for violations of the Rivers and Harbors Act. Similarly, in *New York v. Shore Realty Corp.*, 759 F.2d 1032 (2d Cir. 1985), the court held a corporate officer individually liable for CERCLA violations without piercing the corporate veil. The court explained, "New York courts have held that a corporate officer who controls corporate conduct and thus is an active individual participant in that conduct is liable for the torts of the corporation." *Shore Realty*, 759 F.2d at 1052 (citations omitted).

Most recently, the responsible corporate officer doctrine has been applied to violations of the Federal Clean Water Act (CWA). In *Gulf Park*, the court noted that compliance with the CWA is a matter of strict liability. Thus, a defendant's intentions or good faith efforts to comply do not excuse a violation. *Gulf Park*, 972 F. Supp. at 1059. The court held that the ability to control the facility, coupled with knowledge of the violation, is sufficient to impose personal liability under the CWA.[10] *Id.* at 1063. The court based its decision on a finding that: "Both [officers] had

---

[10]In Washington, the Department of Ecology implements the Federal Clean Water Act pursuant to RCW 90.48.260 and 33 U.S.C. § 1342(b) (1987). The State

actual hands-on control of the facility's activities, were responsible for on-site management, corresponded with regulatory bodies, and were directly involved in the decisions concerning environmental matters." *Id.* at 1064.

Lundgren maintains that the facts as found by the PCHB are not sufficient to impose personal liability. We disagree.

The PCHB found the following facts regarding Lundgren's control of the treatment facility: (1) Lundgren informed Ecology that the treatment facility was not operating; (2) Ecology sent to Lundgren an order canceling the NPDES permit for the facility and directing him and KIE to cease discharging pollutants into the waters of the state; (3) Lundgren appealed the order, on behalf of KIE; (4) Lundgren expressed a willingness to comply with Ecology to rectify the long-term sewage treatment problem; (5) Ecology wrote to Lundgren requesting notification of proposed options; (6) Lundgren changed the long-term solution, causing considerable delays; and (7) Lundgren met with the homeowners association to negotiate a solution. These facts clearly demonstrate Lundgren exercised actual hands-on control of the facility's activities. As an officer who controlled the corporate conduct, Lundgren can be deemed an active participant in that conduct. *Shore Realty*, 759 F.2d at 1052.

The PCHB also made factual findings relevant to Lundgren's knowledge of the violations. The PCHB specifically found:

> KIE allowed the discharge of raw sewage from its sewage treatment system, without any attempt to control it, after Ecology had canceled KIE's NPDES permit. This discharge was in violation of RCW 90.48.080, .144(2) and (3). This violation commenced with the effective date of the termination of

water pollution control act makes it illegal for "any person" to discharge pollutants into waters of the state without a permit. RCW 90.48.080; RCW 90.48.160. "[E]very person" who discharges pollutants without a permit is subject to a civil penalty of $10,000 per day per violation. RCW 90.48.144. The statutory definition of "person" specifically includes "individuals," and evidences a legislative intent to hold individuals responsible for violations of the Act. RCW 90.48.020; *Gulf Park*, 972 F. Supp. at 1063.

the NPDES permit, on June 23, 1990. *Mr. Lundgren, and therefore KIE were clearly aware, as early as November 1988, that although the treatment plant was not operating, sewage was discharging from it to Puget Sound.*

(Emphasis added.) In fact, Lundgren concedes the facts establish his knowledge of the statutory violations. "The facts found by the Board may allow one to conclude that Mr. Lundgren had knowledge of the ongoing sewage problem . . . ."

Because the facts as found by the PCHB establish that Lundgren controlled the facility with knowledge of the violations, he is personally liable under RCW 90.48.080 and RCW 90.48.144. *Gulf Park*, 972 F. Supp. at 1063. Accordingly, the PCHB erred as a matter of law in not holding him personally liable under the responsible corporate officer doctrine.

Because of our decision holding Lundgren liable as the responsible corporate officer, we need not address his possible liability on the alternative theory of piercing the corporate veil.

We affirm.

BRIDGEWATER, C.J., and HUNT, J., concur.

Reconsideration denied February 12, 1999.

Review denied at 138 Wn.2d 1005 (1999).